COLEMAN, Plaintiff-Appellant, v. OUTBOARD MARINE COR-
PORATION, and others, Defendants-Respondents.

Supreme Court

No. 77–011. Submitted on briefs October 10, 1979.—Decided
December 4, 1979.
(Also reported in 285 N.W.2d 631.)

For the appellant the cause was submitted on the briefs of *Thomas R. Fahl* and *Brendel, Flanagan & Sendik, S.C.*, of Milwaukee.

For the respondent Outboard Marine Corporation the cause was submitted on the brief of *Peter W. Bunde, Fred G. Groiss, Patricia K. Ballman* and *Quarles & Brady,* all of Milwaukee.

For the respondents Unions the cause was submitted on the brief of *Zubrensky, Padden, Graf & Bratt* of Milwaukee.

SHIRLEY S. ABRAHAMSON, J. The issue presented by this appeal is whether summary judgment should have been granted in this suit brought by an employee against the union and against his employer alleging breach of the duty of fair representation by the union and breach of the collective bargaining agreement by the employer. We hold that summary judgment should not have been granted.

William J. Coleman, the employee-plaintiff, served a summons and complaint upon his employer, Outboard

Marine Corporation, and upon the local union, United Steelworkers of America, Local 1302, and the international union, United Steelworkers of America, International[1] in September, 1975.

Issue was joined in February 1976. On March 29, 1977, the Union served and filed a notice of motion and motion for summary judgment on the grounds that there is no genuine issue as to any material fact. Documents were submitted in support of this motion but no affidavit describing the documents or otherwise setting forth evidentiary facts was submitted. The motion was based upon "the papers attached hereto and the pleadings filed herein and the exhibits attached which set forth evidentiary facts showing that the [Union] are entitled to summary judgment against the plaintiff."

On April 14, 1977, Outboard moved for summary judgment basing its motion upon the "papers and exhibits filed in support of the Motion for Summary Judgment dated March 29, 1977 filed by [the Union]." At the time of filing the motion, Outboard did not furnish a supporting affidavit. However on May 5, 1977, Outboard furnished an affidavit by one of its attorneys stating that "this motion is based upon the uncontroverted facts set forth in the pleadings and the exhibits previously filed . . . [and that Outboard] believes that this action has no merit."

Coleman submitted a brief in opposition to the motions for summary judgment, arguing that because of procedural improprieties, the motions should not be granted. Coleman's brief did not argue the merits of the motions and did not file any counter affidavits.

On May 10, 1977, the circuit court granted the defendants' motions for summary judgment and ordered that Coleman's complaint be dismissed. The circuit court concluded that "in briefs and at the hearing Coleman

---

[1] The two unions will be referred to herein as the Union and Outboard and the Union are referred to herein as the defendants.

brought forth no material issue of fact which even approached the high standard necessary to prove a breach in the statutory duty of fair representation. Rather, he opposed the motions for summary judgment on the technical ground that they failed to comply with sec. 270.635, Wis. Stats." Coleman moved to set aside the order granting summary judgment, arguing in part that he should be allowed to present affidavits in opposition to the defendants' motions for summary judgment. This motion to vacate the order of May 10, 1977 was denied. Judgment was entered dismissing the complaint. Coleman appeals from both the judgment dismissing the complaint (which is based on the order granting summary judgment) and the order denying his motion to vacate the order granting summary judgment.

On appeal, Coleman again objects to the granting of the motions for summary judgment on the ground that the motions did not comply with the applicable statutory requirements. Sec. 270.635, Stats. 1973,[2] governs summary judgment in actions commenced prior to January 1, 1976, and sec. 802.08, Stats.,[3] governs summary judg-

[2] "270.635. [Stats. 1973] **Summary judgment.** (1) Summary judgment may be entered as provided in this section in any civil action or special proceeding. Notice of motion for summary judgment and the papers in support thereof shall be served within 40 days after issue is joined, subject to enlargement of time as provided in s. 269.45.

"(2) The judgment may be entered in favor of either party, on motion, upon the affidavit of any person who has knowledge thereof, setting forth such evidentiary facts, including documents or copies thereof . . . ; and, if on behalf of the defendant, such evidentiary facts, including documents or copies thereof, as shall show that his denials or defenses are sufficient to defeat the plaintiff, together with the affidavit of the moving party, . . . that the action has no merit . . . unless the opposing party shall, by affidavit or other proof, show facts which the court shall deem sufficient to entitle him to a trial."

[3] "802.08 **Summary judgment** (1) AVAILABILITY. At any time after issue is joined but not later than the time provided in the

ment in actions commenced on or after January 1, 1976.[4]
The question Coleman raises is when was this action
commenced and which statute applies. Coleman served

scheduling order under s. 802.10, any party may move, with or
without supporting affidavits, for a summary judgment in the
party's favor on any claim, counterclaim, cross-claim or 3rd party
claim which the party asserts or which is asserted against the
party. Amendment of pleadings shall be allowed as in cases where
objection or defense is made by motion to dismiss.

"(2) MOTION. The motion shall be served at least 20 days
before the time fixed for the hearing. The adverse party prior
to the day of hearing may serve opposing affidavits. The judg-
ment sought shall be rendered if the pleadings, depositions, an-
swers to interrogatories, and admissions on file, together with
the affidavits, if any, show that there is no genuine issue as to
any material fact and that the moving party is entitled to a judg-
ment as a matter of law. A summary judgment, interlocutory in
character, may be rendered on the issue of liability alone al-
though there is a genuine issue as to the amount of damages.

"(3) SUPPORTING PAPERS. Supporting and opposing affidavits
shall be made on personal knowledge and shall set forth such
evidentiary facts as would be admissible in evidence. Copies of
all papers or parts thereof referred to in an affidavit shall be at-
tached thereto and served therewith, if not already of record. The
court may permit affidavits to be supplemented or opposed by
depositions, answers to interrogatories, or further affidavits.
When a motion for summary judgment is made and supported as
provided in this section, an adverse party may not rest upon the
mere allegations or denials of the pleadings but the adverse par-
ty's response, by affidavits or as otherwise provided in this sec-
tion, must set forth specific facts showing that there is a genuine
issue for trial. If the adverse party does not so respond, summary
judgment, if appropriate, shall be entered against such party.

"(4) WHEN AFFIDAVITS UNAVAILABLE. Should it appear from
the affidavits of a party opposing the motion that the party can-
not for reasons stated present by affidavit facts essential to justify
the party's opposition, the court may refuse the motion for judg-
ment or may order a continuance to permit affidavits to be ob-
tained or depositions to be taken or discovery to be had or may
make such other order as is just."

[4] Sec. 801.01(3)(b), Stats., provides:

"801.01(3) EFFECTIVE DATES. (a) Chapters 801 to 803 apply
to all actions commenced on or after January 1, 1976. (b) Chap-

the summons and complaint on the defendants prior to January 1, 1976, the effective date of the revised Rules of Civil Procedure. However, in ruling on a demurrer the circuit court dismissed the complaint against the Union on December 23, 1975, and an amended complaint was served on the Union and Outboard on January 12, 1976.

Under both sec. 270.635, Stats. 1973, and sec. 802.08, Stats., summary judgment must be denied if there is a genuine issue as to any material fact. Because we hold that the documents submitted by the defendants show that there is a genuine issue as to a material fact and that it was error to grant summary judgment, we need not determine whether there is merit to Coleman's objections to the motions on the grounds that defendants did not file appropriate documents or give him proper notice.

This court has in numerous cases set forth the procedure it follows in reviewing whether a summary judgment should have been granted. Initially the court must examine the pleadings to determine whether a cause of action has been stated and whether a material issue of fact is presented.

If the complaint states a claim and the pleadings show the existence of factual issues, the court examines the moving party's (in this case, the defendants') affidavits and other proof to determine whether there are disputed material facts sufficient to entitle the opposing party to a trial. Sec. 270.635(2), Stats. 1973; sec. 802.08(3), Stats. *Ricchio v. Oberst,* 76 Wis.2d 545, 550–51, 251 N.W.2d 781 (1977); *Krezinski v. Hay,* 77 Wis.2d 569, 572, 253 N.W.2d 522 (1977).

---

ters 804 to 807 shall apply to all actions pending or commenced on or after January 1, 1976, except those actions in which trial has commenced prior to January 1, 1976 as to which the statutes and rules in effect prior to January 1, 1976, shall continue to apply."

On summary judgment the moving party has the burden to establish the absence of a genuine, that is, disputed, issue as to any material fact. On summary judgment the court does not decide the issue of fact; it decides whether there is a genuine issue. A summary judgment should not be granted unless the moving party demonstrates a right to a judgment with such clarity as to leave no room for controversy; some courts have said that summary judgment must be denied unless the moving party demonstrates his entitlement to it beyond a reasonable doubt. *Madison v. Desert Livestock Co.,* 574 F.2d 1027, 1037 (10th Cir. 1978). Doubts as to the existence of a genuine issue of material fact should be resolved against the party moving for summary judgment. *Hopewell Township Citizens v. Volpe,* 482 F.2d 376, 380 (3d Cir. 1973); 10 Wright & Miller, *Federal Practice & Procedure: Civil* sec. 2725, p. 510 (1973).

The papers filed by the moving party are carefully scrutinized. The inferences to be drawn from the underlying facts contained in the moving party's material should be viewed in the light most favorable to the party opposing the motion. If the movant's papers before the court fail to establish clearly that there is no genuine issue as to any material fact, the motion will be denied. 6 Moore on Federal Practice, 56.15[3], p. 56–463 *et seq.* (2d ed. 1976). If the material presented on the motion is subject to conflicting interpretations or reasonable people might differ as to its significance, it would be improper to grant summary judgment. 10 Wright & Miller, *Federal Practice & Procedure: Civil* sec. 2725, p. 515 (1973); *Kraemer Bros. Inc. v. United States Fire Insurance Co.,* 89 Wis.2d 555, 565–67, 278 N.W.2d 857 (1979).

We turn now to review Coleman's complaint under these standards. The amended complaint alleges that

on June 18, 1975, Coleman was operating his assigned machine; that he discovered that the machine was not working properly; that he took a machine part to a repair station; that on his return to his job station, he was informed by his foreman that his work was "junk" and the foreman immediately suspended him; and that his suspension and discharge were not for proper cause. It further recites that the collective bargaining agreement provides a five-step grievance procedure; that on June 20, 1975, at the third-step hearing, Outboard decided that Coleman's suspension would continue and that his work record would show he made "junk," and that Coleman refused to accept this decision and requested the Union to take the matter to the fourth step of the grievance procedure. At the fourth step of the grievance procedure, at a meeting of Union and Outboard representatives on July 11, 1975, Outboard agreed that Coleman would be reinstated on July 14, 1975, that Coleman would not receive back pay, and that his work record would not be cleared of the incident.

Coleman alleges that he appeared at the plant on July 14, 1975 and informed the Union that while he agreed to return to work he wanted back pay and his record expunged. The amended complaint further recites that Coleman was not told that a settlement had been reached at the fourth step of the grievance procedure and that Coleman was led to believe that the Union was considering whether to go to arbitration (the fifth step of the grievance procedure) but that if he returned to work on July 14, 1975, arbitration would not be undertaken. Coleman did not return to work, and Outboard terminated him for failure to abide by the settlement reached at the fourth step of the grievance procedure.

Coleman's complaint charges the Union with numerous acts which Coleman asserts are the basis for his allegation that the Union's representation of him was arbitrary, discriminatory, and in bad faith and constituted

a breach of the Union's duty of fair representation, including that the Union failed to inform him that a settlement had been reached at step four of the grievance procedure and that his failure to report to work would cause him to lose his job; that the Union led him to believe that his return to work on July 14, 1975 would waive the possibility of arbitration, while in reality the Union had decided not to arbitrate his dismissal. The Union's answer denied that it had engaged in this conduct.

In order to recover from the Union, the complaint must state a claim that the Union breached its duty of fair representation. In order to recover from Outboard, the complaint must also state a claim that his discharge was contrary to the collective bargaining agreement. *See Mahnke v. Wisconsin Employment Relations Commission*, 66 Wis.2d 524, 225 N.W.2d 617 (1975); *Hines v. Anchor Motor Freight, Inc.*, 424 U.S. 554 (1976); *Vaca v. Sipes*, 386 U.S. 171 (1967); *Robesky v. Qantas Empire Airways, Ltd.*, 573 F.2d 1082 (9th Cir. 1978); *Cronin v. Sears, Roebuck & Co.*, 445 F. Supp. 277, 279 (E.D. Mo. 1978), modified, 588 F.2d 616 (8th Cir. 1978).

We will first consider whether summary judgment was appropriate with regard to the claim that the Union breached its duty of fair representation.

The employee does not have an absolute right to arbitration. The fact that the Union settles a grievance short of arbitration does not, without more, constitute a breach of the duty of fair representation. *Mahnke v. WERC*, 66 Wis.2d 524, 532, 225 N.W.2d 617 (1975). The duty of fair representation was described in *Vaca v. Sipes*, 386 U.S. 171, 190–191 (1967):

"A breach of the statutory duty of fair representation occurs only when a union's conduct toward a member of the collective bargaining unit is arbitrary, discriminatory, or in bad faith. See *Humphrey v. Moore* [375 U.S.

335 (1964)]; *Ford Motor Co. v. Huffman* [345 U.S. 330 (1953)]. . . .

"...

". . . . It can well be doubted whether the parties to collective bargaining agreements would long continue to provide for detailed grievance and arbitration procedures of the kind encouraged by L. M. R. A. sec. 203(d), *supra,* if their power to settle the majority of grievances short of the costlier and more time-consuming steps was limited by a rule permitting the grievant unilaterally to invoke arbitration. Nor do we see substantial danger to the interests of the individual employee if his statutory agent is given the contractual power honestly and in good faith to settle grievances short of arbitration. For these reasons, we conclude that a union does not breach its duty of fair representation, and thereby open up a suit by the employee for breach of contract, merely because it settled the grievance short of arbitration."

The *Vaca* test was recently restated in *Ryan v. Newspaper Printing Pressman's Union No. 2,* 590 F.2d 451, 455 (2d Cir. 1979):

### "THE LEGAL STANDARD OF FAIR REPRESENTATION

"A union has a statutory duty of fair representation under sec. 8(b) of the Labor Management Relations Act, a breach of which entitles the aggrieved employee(s) to relief in the courts at law as well as before the National Labor Relations Board. *Vaca v. Sipes,* 386 U.S. 171, 87 S. Ct. 903, 17 L. Ed.2d 842 (1967). In that leading case the Court circumscribed the duty, however, by stating that a breach occurs 'only when a union's conduct toward a member of the collective bargaining unit is arbitrary, discriminatory, or in bad faith.' *Id.* at 190, 87 S. Ct. at 916. Not every breach resulting in unfairness, then, is remediable; it must have an additional element to it. Thus, for example, in the grievance context a union may not 'arbitrarily ignore' a meritorious grievance or process it 'perfunctor[ily],' but the employee does *not* have 'an absolute right to have his grievance taken to arbitration.' *Id.* at 191, 87 S. Ct. at 917. '[A]rbitrary or

bad-faith conduct,' *id.* at 193, 87 S. Ct. 903, or 'substantial evidence of fraud, deceitful action or dishonest conduct,' *Humphrey v. Moore,* 375 U.S. 335, 348, 84 S. Ct. 363, 371, 11 L. Ed.2d 370 (1964), is required to show a breach of the duty of fair representation. See *Amalgamated Association of Street, Electric Railway & Motor Coach Employees v. Lockridge,* 403 U.S. 274, 299, 91 S. Ct. 1909, 29 L. Ed.2d 473 (1971).

"This court has refined these concepts to stand for the proposition that, at least in negotiating and implementing a contract, a union may breach the statutory duty by arbitrary or irrational conduct, even in the absence of bad faith or hostility in the form of ill will or common law *malitia;* but although the employee may challenge actions other than those involving anti-minority animus or malice, nevertheless 'the union has broad discretion to adjust the demands of competing groups within its constituency as long as it does not act arbitrarily.' *Jones v. Trans World Airlines, Inc.,* 495 F.2d 790, 798 (2d Cir. 1974). We are not necessarily left with shifting ad hoc standards to be fashioned anew in each case, but we do have broad parameters of judgment that necessarily vary from context to context."

*See also Robesky v. Qantas Empire Airways, Ltd.,* 573 F.2d 1082 (9th Cir. 1978), discussed later.

We adopted the *Vaca* test in *Mahnke v. WERC,* 66 Wis.2d 524, 533, 225 N.W.2d 617 (1975), and held that the issue of whether the union breached its duty of fair representation to the employee is a question of fact. *See also Clark v. Hein-Werner Corp.,* 8 Wis.2d 264, 272, 99 N.W.2d 132, 100 N.W.2d 317 (1959).

Coleman's complaint alleges conduct by the Union which if proved could be found to violate the duty of fair representation. The Union denied the conduct. Accordingly, the complaint states a claim and the pleadings show there are disputed facts. We must examine the material on file to determine whether there are disputed material facts sufficient to entitle the party opposing the motion for summary judgment to a trial.

The evidentiary material upon which the defendants' motions for summary judgment were based was contained in seven exhibits, the contents of which we shall briefly describe.[5] Exhibits A and B are summaries of Steps 3 and 4 (respectively) of the grievance proceedings. Exhibit A states that in the Step 3 grievance hearing the Union argued, to excuse Coleman's job performance, that he had just returned from sick leave; that the machine was running improperly; that he did not know the machine had been running improperly; that he should have been given the usual opportunity to rework the parts. Outboard decided to suspend Coleman for two weeks, despite Union requests to reduce the suspension to one week. The Union expressed Coleman's unhappiness with the decision; Outboard responded by converting the suspension to a termination. The Union demanded a fourth step hearing.

Exhibit B, which summarizes the step 4 hearing, states that Coleman demanded back pay and that his record be cleared because he felt he was unjustly disciplined, although he admitted "I probably should have seen the parts. It was an oversight on my part." After Coleman left the room, Outboard set forth its proposal: Coleman would be reinstated in his old job without back pay or the clearing of his record. According to the summary, Outboard stated that "If he does not return on July 14, 1975 for his shift, he will be removing himself from our rolls." The Union's representative responded: "This is agreeable. We will inform the employee."

---

[5] It does not appear in the record that Coleman objected to these exhibits on the ground that no proper foundation was laid for the documentary exhibits or on the ground that the exhibits did not contain facts admissible in evidence. *See Hamilton v. Keystone Tankship Co.*, 539 F.2d 684 (9th Cir. 1976); *California Pacific Bank v. Small Business Assoc.*, 557 F.2d 218 (9th Cir. 1977); *Cinocca v. Baxter Labs*, 400 F. Supp. 527 (E.D. Okla. 1975).

Exhibit C is an excerpt of Coleman's answers to Outboard's Interrogatories: Coleman stated that Union representatives had told him that his grievance procedure was a waste of time and money; that on July 14, 1975, he advised the Union representatives (but not Outboard) of his rejection of the step 4 decision; and that he told the Union that he wanted to proceed to arbitration, the fifth step. Coleman asserted that he was told "Okay, Coleman, it's your bed, you sleep in it. Go and do what you want. We'll be in touch but it might be weeks because we have a lot of grievance meetings coming up and we can't spend all our time on you." In answer to one of the questions in the interrogatory Coleman asserted that he was never told or led to believe that any settlement had been reached at the step 4 hearing and that he thought the step 4 decision was merely an offer. Coleman stated in the interrogatories: "The first time I heard the word settlement was during a proceeding before the Unemployment Compensation held November 3, 1975." Coleman also stated that he and the foreman had disagreements in their working relationship.

Exhibits D and E are excerpts from Coleman's deposition taken by the defendants on September 10, 1976. Coleman stated that he informed the Union that he was accepting part of the offer and rejecting part of the offer (referring to the step 4 decision). The Union representative told him he had an option of "taking or leaving the whole thing." Coleman said he interpreted this statement as meaning that the Union "just didn't care what I did." Coleman said that he asked the Union representative what the Union's position was, and the Union representative responded that "we don't know right now where we stand." Coleman asserted he was feeling "lousy," on the day he misworked the pieces and he conceded that although he tried to inspect each piece, "there was room for improvement" in his inspection operation. To the

best of his recollection he failed to inspect 150 to 200 pieces as he was supposed to do.

Exhibit F is the decision of the Appeal Tribunal of the Department of Industry, Labor and Human Relations Commission, which denied Coleman's unemployment claim. The evidence upon which the Tribunal based its decision is not part of the exhibit. The Tribunal found that Coleman had produced unacceptable parts and that Coleman's allegation that the parts frequently had dents did not justify his acceptance of the parts in question. The Tribunal concluded that Coleman's "actions in failing to meet the employer's [parts] tolerances together with his failure to return to work on July 14, 1975, evinced a willful, intentional, and substantial disregard of the employer's interests."

Exhibit G are documents relating to Coleman's charges before the National Labor Relations Board against Outboard for discriminating against him because of his union activities and against the Union for unfair representation. On the basis of its investigation (which is not set forth in the exhibit) the Regional Director of the NLRB refused to issue a complaint against Outboard, because it appeared that Outboard terminated Coleman because of poor workmanship and refusal to return to work; the charge against the Union was dismissed because it "appears that the Union acted within the wide range of reasonableness accorded a statutory bargaining representative in the administration of a collective bargaining agreement in refusing to take his grievance to arbitration."

On the basis of these exhibits the circuit court, relying on *Powell v. Globe Industries, Inc.*, 431 F. Supp. 1096 (N.D. Ohio 1977), granted defendants' motions for summary judgment holding that "Coleman brought forth no material issue of fact which even approached the high standard necessary to prove a breach in the statutory duty of fair representation."

In *Powell,* the employee was terminated, and the union pursued the grievance through step 4. The union's affidavit submitted on the motion for summary judgment averred that its decision to accept the company's settlement offer and not to process the grievance to step 5 arbitration was based on its determination that the offer was the best possible relief that could be secured. In response to this affidavit the employee averred only that the union's decision not to take the grievance to arbitration was "arbitrary, perfunctory, discriminatory and in bad faith." The employee did not set forth any facts which would support such a claim. The district court concluded that conclusory allegations of discrimination are insufficient to maintain an action against the union for breach of its duty of fair representation. The district court granted the motion for summary judgment, stating:

"As the Union's decision not to take the plaintiff's grievance to arbitration was based on their considered judgment that Globe's settlement offer was the best they could do for the plaintiff, and as it does not appear that their handling of the plaintiff's grievance was arbitrary, perfunctory, or in bad faith, the Court will grant the Union's motion for summary judgment." *Powell v. Globe Industries, Inc., supra,* 431 F. Supp. at 1099–1100.

As in *Powell,* the documents submitted by the defendants in the instant case attempted to show that Outboard had cause to suspend or terminate the employee and that the Union proceeded through step 4 and obtained as good a settlement as it could for Coleman.

However, the instant case is distinguishable from *Powell.* Coleman's complaint alleges specific acts which Coleman asserts violated the duty of fair representation, namely Coleman's complaint asserts that the Union breached its duty to represent him fairly by failing to tell him that a settlement between the Union and Outboard had been reached at step 4, that his rejection of

the offer of settlement would mean termination of his job, and that the Union had decided not to proceed to arbitration. Also, unlike *Powell*, in the case at bar the exhibits, which we previously summarized, supply evidentiary facts to support the complaint and show that there is a dispute as to whether the Union advised Coleman that the Union and Outboard had agreed upon a final settlement offer and that the Union would not go to arbitration. We view these disputed facts as significant in determining whether the Union's conduct toward a member of the collective bargaining unit was reasonable and fair or was arbitrary, discriminatory or in bad faith.

In *Robesky v. Qantas Empire Airways, Ltd.*, 573 F.2d 1082 (9th Cir. 1978) the court of appeals held that if the employee could prove that she did not know (or that she should not have known) that the union would not arbitrate the grievance, the trier of fact could find that the union's failure to inform her of its position, if intentional, had no rational basis and was arbitrary, or if unintentional was so egregious as to be arbitrary. The court of appeals concluded that while mere negligence is not enough to breach the duty of fair representation, arbitrary conduct is not limited to intentional conduct; acts of omission not intended to harm a member "may be so egregious, so far short of minimum standards of fairness to the employee and so unrelated to legitimate union interests as to be arbitrary." The court of appeals continued by stating, "it is clear that unintentional acts or omissions by union officials may be arbitrary if they reflect reckless disregard for the rights of the individual employee . . . they severely prejudice the injured employee . . . and the policies underlying the duty of fair representation [ability to screen meritless grievances and allocate union resources] would not be served by shielding the union from liability in the circumstances

of the particular case . . . ." *Robesky v. Qantas Empire Airways, Ltd.*, 573 F.2d 1082, 1090 (9th Cir. 1978). *See also Ness v. Safeway Stores, Inc.*, 598 F.2d 558, 560 (9th Cir. 1979).

We conclude that there is a genuine issue of material fact, and the Union's motion for summary judgment should not be granted.

Because the circuit court concluded that a summary judgment should be granted to the Union, it granted summary judgment to Outboard without ruling on the question whether there is a genuine issue as to any material fact in regard to Coleman's claim against Outboard that it breached the collective bargaining agreement when it suspended or terminated him. On appeal Outboard argues that even if the order granting summary judgment to the Union is overruled, summary judgment in favor of Outboard should be affirmed, because Coleman's suspension and termination was not a violation of the collective bargaining agreement.

The collective bargaining agreement provides that Outboard could suspend or discharge an employee "for proper cause," and that the issue of proper cause is subject to the five-step grievance procedure.[6] In the instant case Coleman was terminated at step 4.

---

[6] "Sec. 3 . . . [of the collective bargaining agreement] 5. (a) The Union recognizes that the Management of the works and the direction of the working forces including the right to hire, suspend or discharge for proper cause, or transfer, and the right to relieve employees from duty because of lack of work, or for other legitimate reasons, and in general all other functions of Management not expressly limited by this agreement, are reserved to and vested exclusively in Evinrude [a division of Outboard]. The application of this section shall not conflict with the terms of this Agreement and shall not be used to nullify any of the provisions thereof, or in a discriminatory manner against any member or officer of the Union."

"Section 12. Discharges.

The documents submitted by Outboard raise a material issue of fact whether the suspension or termination was for proper cause or was contrary to the collective bargaining agreement. Coleman did admit that he produced defective pieces; he had previously been suspended for poor workmanship. However, the exhibits also show a dispute as to facts which might be considered in determining whether the suspension or termination was for proper cause: was the machine faulty; was Coleman ill; did Outboard have a practice of allowing employees to rework defective pieces; was Coleman unfairly denied the opportunity to rework the pieces; was the foreman who suspended Coleman biased against him. We conclude there is a genuine issue of material fact, and Outboard's motion for summary judgment should not be granted.

Accordingly, the orders granting summary judgment and denying the motion to vacate the summary judgment should be vacated, and the judgment dismissing the complaint should be reversed.

*By the Court.*—Orders vacated, judgment reversed, and cause remanded for proceedings not inconsistent with this opinion.

---

"The question of whether an employee was suspended or discharged for proper cause shall be subject to the Grievance Procedure."