James M. POYNTER, Shirley Poynter, James Sanders, Rita Sanders, Robert Steinmetz, Patricia Steinmetz, Randall Montgomery, Joan Montgomery and Donald Johnson, Plaintiffs,

v.

Wayne JOHNSTON and Diane Johnston, his wife, Defendants and Third-Party Plaintiffs-Appellants-Petitioners,

Benjamin GEORGE, Ray G. Brown, Robert C. Orf, as members of the town board, and Town of St. Joseph, Third-Party Defendants-Respondents.†

Supreme Court

*No. 81–2046. Argued September 6, 1983.—*
*Decided October 4, 1983.*

(Also reported in 338 N.W.2d 484.)

---

† Motion for reconsideration denied, without costs, on November 15, 1983.

For the petitioners there were briefs by *Alex S. Kosa* and *Law Offices of Alex S. Kosa,* Hudson, and oral argument by *Alex S. Kosa.*

For the respondents there was a brief by *Edward F. Vlack* and *Davison & Vlack,* River Falls, and oral argument by *Edward F. Vlack.*

STEINMETZ, J. The principal issue in this case is whether there is a genuine issue of material fact regarding the issue of acceptance of the road as a public road which would preclude the granting of a motion for summary judgment. The trial court, the Honorable John G. Bartholomew, granted a motion for summary judgment brought by the town and its officers. The court of appeals affirmed. We find there is sufficient conflict of evidence to conclude that the trial court improperly granted the motion for summary judgment. We reverse.

The motion for summary judgment was brought by the third-party defendants asking for dismissal of the third-party complaint.

Plaintiffs[1] are purchasers of residential lots developed and sold by the defendants and third-party plaintiffs, Wayne and Diane Johnston. The Johnstons sold plaintiffs the residential lots with a temporary roadway easement to exist until the roadway was dedicated as a public road. The town board members and the Town of St. Joseph are third-party defendants pursuant to the third-party complaint of Johnstons.

On June 7, 1972, Wayne Johnston and other resident freeholders petitioned the town board to accept the roadway as a town road to be known as East Oaks Trail. The town board met on June 9, 1972, and temporarily approved accepting the road. As a condition of acceptance, the town board provided that Johnston should fix all wash-outs, seed slopes and maintain the road for one year. The town clerk's handwritten entry of the minutes of the June 9, 1972, town board is:

"Clerk read petition from Wayne Johnston on putting his new road on township road, thru property previous [sic] owned by Herman Dahlke. Road to be called East Oaks Trail. Board decided to temporary [sic] approve the road, providing Mr. Wayne Johnston fix all washouts, seed slopes and maintain for 1 year."

At the annual town meeting on April 5, 1973, there was further discussion concerning East Oaks Trail and the matter of acceptance was put to a vote. The clerk's handwritten minutes of that meeting read as follows:

"Clerk read recommendation from Board of Audit. Discussion on Blacktopping roads before they are put on Township roads. Wayne Johnston asked if his application come [sic] under this or not. He had applied last fall, but Road was not finished. Chairman asked people how they feel on this matter. Discussion on floor from Ray Brown, Howard LaVenture, Dale Heckman, Boyd

---

[1] This author is not related to the plaintiffs, Robert and Patricia Steinmetz, in any way.

Brooks, Delbert Schroeder, Michael Wakeling and La Vern Anderson.

"Mr. Johnston stated he didn't care if road is blacktop or not, just so mailman and school bus can come in. Road is not yet completed.

"Chairman asked All in favor of taken over this Road, if Mr. Johnston brought up to Town specifications, to seed shoulders and fill the wash-outs. Raise of hands— In favor—50. Nay's—20.

"Road will be put on Township Road, but will be left graveled for a few years."

The blacktopping requirement for town roads was not adopted by the town until the annual meeting of April 3, 1975. The appropriate portion of the clerk's minutes reads:

"Dale Heckman made a motion that all roads be graded, graveled and blacktopped before being taken over by the town. Clarence Severson seconded. Carried."

Subsequent meetings of the town board discussed the road as reflected in the clerk's minutes as follows:

Meeting of August 11, 1977:

"Private Road East Oaks—Ben George said he and Bob Orf had looked at the road on Tuesday. To bring it up to town specs to be accepted as a town road it should be blacktopped; cut down the hill because the grade is too high; expand the cul de sac to 80 ft. radius and raise it on one side and widen the road in places.

"Discussion of what was discussed at annual meeting of April 1973, and later annual town meetings before private roads can be taken over by town. Wayne Johnson [sic] said he was not willing to blacktop the road but he would fix the cul de sac and put guard rails on the hill, and he did not want to widen the road thereby tearing out foliage.

"Mr. Davis, town treasurer, said he remembered a later annual town meeting at which the road was discussed and decided since Mr. Johnson [sic] had not done anything to bring the road up to specs it was too late to

accept the town's offer to be the last road to be black-topped and at this point blacktopping was too expensive to do now.

"Bob Orf read a section from the April 1975 annual meeting as follows: 'Dale Heckman made a motion that all roads be graded, graveled and blacktopped before being taken over by the town. Clarence Severson seconded, Carried.'

"Mr. Poynter suggested that the minutes reflect that the residents want the town to take over the road so the school bus will come down, but that the town is not obligated to blacktop it if the road is brought up to present town specs, so that it will be in the minutes for future reference.

"Bob Orf moved to table pending further clarification by the April 75 annual meeting tape. Ray Brown seconded. Carried."

September 8, 1977, town board public meeting:

"East Oaks Road. Clerk played tape from 1975 annual meeting with discussion and motion that all roads be blacktopped before being turned over to town. The annual meeting approved a motion by Dale Heckman that 'all roads be graded, graveled and blacktopped at owner's expense before being added to town road system.'

"After listening to the tape, Wayne Johnston said he thought he should be grandfathered in on basis of minutes of April, 1973, annual meeting. It was pointed out that the action of the townspeople at an annual meeting (1975) should take precedence. Howard LaVenture questioned adopting clerk's report at the annual meeting in 1973 and asked that the town then consider taking over his road too. The matter was tabled until the Board can get a legal opinion, on motion by Bob Orf, second by Ray Brown, carried."

October 13, 1977 town board meeting:

"East Oaks Road. The clerk read a letter from the town attorney indicating that he felt the road had not been brought up to quality within a reasonable time and therefore the town did not have any obligation to take

over the road. Mr. Wayne Johnston challenged what was said about what occurred at the April 1973 annual meeting and asked how one is notified of the meetings and agenda. It was a properly published annual town meeting for which no agenda is printed. Robert Orf moved that the town not take over East Oaks Trail until it is brought up to specifications and blacktopped. Ray Brown seconded, carried."

At the September 14, 1978 public town hearing:

"East Oaks Road Petition was presented by Mr. Fisk. The residents feel the road should be grandfathered in as it is now graded, cleared has culverts and the cul de sac is widened. Clerk read previous letters from attorney. The question of maintenance of the road was raised. Jack Davis suggested contacting the county traffic and the school administration to have the area declared hazardous since the bus backs out onto a narrow road. Bob Orf moved to accept the petition and table the matter til [sic] the next meeting. Ray Brown seconded, carried."

At the public hearing of October 12, 1978, the minutes state:

"The minutes were read and approved. East Oaks Rd: Several residents from East Oaks were in attendance. After discussion, it determined that the following should be done: (1) bring cul de sac up to specs because it's too narrow, (2) 22′ top on gravel and (3) maintain for 1 yr so if anything goes wrong it will be taken care of by the owner. Bob Orf moved to abide by the decision of the annual town meeting that a road must meet town specs *and be blacktopped 11/9/78* before it is taken over. Ray Brown seconded, carried. Residents asked if this could be brought up at an annual meeting. Ben answered the townspeople could decide to take over East Oaks Trail at an annual meeting if they so desired. Discussion of previous annual town meeting action. . . ." (Emphasis added.)

The words "and be blacktopped 11/9/78" were written above other words in the minutes and apparently were

added at a different date than the original entry and, therefore, were marked 11/9/78.

The only evidence presented on the motion for summary judgment was a copy of the minutes from the town board meetings partially recited above and sworn to as complete and accurate by the Town of St. Joseph clerk, Carolyn Barrette, and an affidavit of Wayne Johnston.

In opposition to the motion for summary judgment at the trial court, Wayne Johnston's affidavit stated he offered East Oaks Trail as a town road; there was a conditional acceptance by the town board and he fulfilled the conditions set; and, in addition, there was an acceptance of his offer for dedication through the public user doctrine. His affidavit read in paragraphs 4 and 5 as follows:

"4. Your affiant further states that East Oaks Trail was constructed in all respects to meet town road specifications in existence at the time of its dedication; that from time to time because of heavy rains during the times in question there were washouts and that on numerous occasions over the years your affiant has repaired the washouts, has seeded the slopes, and he has maintained the road for numerous years following the offer of dedication of East Oaks Trail, including repairs, additions of gravel, grading, snow removal and other customary road work. That the matters were performed by your affiant because he was not aware of the law and felt that he had an obligation to continue to maintain the roadway until the same was performed by the Township. That the Township has not maintained East Oaks Trail in any manner, certaintly not as they have maintained other town roads in the Township.

"5. That East Oaks Trail, the road in question, is open to the general public, is used by the general public, including town's people, delivery men, visitors, guests, solicitators, in the same general usage as any public town road is used in the Township, excepting the school buses which refuse to enter upon a private road to pick up school children during the course of the school year."

We discussed the motion for summary judgment treatment in *Grams v. Boss,* 97 Wis. 2d 332, 338–39, 294 N.W.2d 473 (1980) as follows:

"On summary judgment the moving party has the burden to establish the absence of a genuine, that is, disputed, issue as to any material fact. On summary judgment the court does not decide the issue of fact; it decides whether there is a genuine issue of fact. A summary judgment should not be granted unless the moving party demonstrates a right to a judgment with such clarity as to leave no room for controversy; some courts have said that summary judgment must be denied unless the moving party demonstrates his entitlement to it beyond a reasonable doubt. Doubts as to the existence of a genuine issue of material fact should be resolved against the party moving for summary judgment.

"The papers filed by the moving party are carefully scrutinized. The inferences to be drawn from the underlying facts contained in the moving party's material should be viewed in the light most favorable to the party opposing the motion. If the movant's papers before the court fail to establish clearly that there is no genuine issue as to any material fact, the motion will be denied. If the material presented on the motion is subject to conflicting interpretations or reasonable people might differ as to its significance, it would be improper to grant summary judgment. 10 Wright & Miller, *Federal Practice & Procedure: Civil* sec. 2725, p. 515 (1973) ; *Kraemer Bros. Inc. v. United States Fire Insurance Co.,* 89 Wis. 2d 555, 565–67, 278 N.W.2d 857 (1979). *Coleman v. Outboard Marine Corp.,* 92 Wis. 2d 565, 571, 285 N.W.2d 631 (1979)."

Doubts as to the existence of a genuine issue of material fact should be resolved against the Town of St. Joseph and its officers. Also, inferences to be drawn from the underlying facts contained in the town board meeting minutes should have been viewed in the light most favorable to the Johnstons. If the town board's

minutes did not clearly establish that there was no genuine issue of material fact, the motion should have been denied. The trial court determined the facts in stating the issue as follows:

"Does the conditional acceptance of a town road by town authorities give legal status to such road *where the conditions of acceptance have never been fulfilled* and the town authorities have never recognized such road as an official town road?" (Emphasis added.)

The very issue to be decided is whether the conditions of acceptance were fulfilled. The inference in the minutes of June 9, 1972, and April 5, 1973, can be viewed in favor of finding the conditions had been met by the Johnstons to fulfill the town's conditional acceptance. If the conditions of acceptance are proven to have been completed to the satisfaction of the trier of fact, then common law acceptance was established before the subsequent meetings. The doubts and inferences in the minutes of June 9, 1972, and April 5, 1973, were not resolved against the movant, the town, and in favor of the Johnstons who opposed the motion for summary judgment.

Dedication may be by common law as well as statutorily under the provisions of sec. 80.02, Stats.[2] "Com-

---

[2] Sec. 80.02, Stats., provides:

"**80.02 Town highways; petition to lay, alter or discontinue.** When 6 or more resident freeholders wish to have a highway laid out, widened, altered or discontinued in their town, they may make application in writing to the supervisors of said town for that purpose. The application may be delivered to any supervisor or to the town clerk. In case the application is for the discontinuance of all or of a part of any highway, and it is desired, as permitted by s. 80.05, to omit from the notice the description of the lands abutting upon such highway which will be benefited, injured or damaged by the discontinuance of such highway or any part thereof, the application shall contain the description of the lands abutting upon such highway which will be benefited, injured or damaged by the discontinuance of such highway or any part thereof

mon-law dedication requires an intention to dedicate expressed in some form, . . . and an acceptance of the dedication by the proper public authorities, or by general public user." *Hunt v. Oakwood Hills Civic Asso.,* 19 Wis. 2d 113, 118, 119 N.W.2d 466 (1963); *Knox v. Roehl,* 153 Wis. 239, 243, 140 N.W. 1121 (1913); *see also, Gogolewski v. Gust,* 16 Wis. 2d 510, 514, 114 N.W.2d 776 (1962).

There must be an absolute and complete dedication which means an offer of the land for public use and an acceptance thereof. *Galewski v. Noe,* 266 Wis. 7, 11, 62 N.W.2d 703 (1954). "Dedications or offers thereof need not be in writing, nor in any particular form. The intention of the owner to dedicate and acceptance thereof by the public are the essential elements of a complete dedication." *Id.* at 12. Also, "Our statutes do prescribe methods for the dedication of land for highway purposes, but the statutory provisions are not exclusive. We still recognize common-law dedications, and that is what we have here." *Id.* at 15.

---

and shall be delivered to the town clerk with a request in writing that such application remain on file with the clerk until the time set for hearing for reference and inspection by any parties concerned. When all the owners of lands abutting on the part of a highway sought to be altered, desire such alteration, and the supervisors are of the opinion that the public will not be materially affected by such alteration, the board may make the same, and may take into consideration donations of money, land or services for the making of such alterations. When the laying out of a highway would require the construction of a bridge costing more than $1,000, exclusive of donations, the order of the supervisors laying out such highway shall not be effective unless approved by the electors of the town, and an estimate by the department of transportation shall be conclusive of the cost of such bridge for the purposes of this section. No town board shall discontinue any part of a state trunk or county trunk highway, nor discontinue any highway when such discontinuance would deprive the owner of lands access therefrom to a highway."

In the instant case, the dedication or offer of East Oaks Trail as a town road was made by the Johnstons and this is not an issue. The issue of fact still remains as to whether the town's conditions of acceptance were complied with by the Johnstons.

Due to the allegations in the pleadings, there is an issue in the case of acceptance of the road as public based on the doctrine of public user. We do not decide that issue.

The defendants, Johnstons, state a claim for contribution and/or indemnification against the Town of St. Joseph, and they name town officers in their third-party complaint. If the common law dedication and acceptance are found by the trier of fact to have been complete and yet find the plaintiffs have suffered damages, then the parties causing those damages have been the town and its officers. If the Johnstons are held to have in fact breached their agreements with the plaintiffs, and owe damages as found to the plaintiffs, those damages may have been caused in fact by the town and its officers and therefore indemnification may be owed the Johnstons.

In the original complaint, which was incorporated in the amended complaint, plaintiffs sought specific performance to have the road meet the existing standards of the Town of St. Joseph and tender the road to the town. In the alternative, the plaintiffs asked that the defendants be liable in damages for the cost of constructing the road to the standards of the town. Plaintiffs also sought punitive damages and any relief allowed by law or equity.

The amended complaint alleges material representations made by Johnstons as an inducement for the plaintiffs to purchase land and warranted that the access road (East Oaks Trail) "would be upgraded to St. Joseph Township standards dedicated to and accepted by the Town of St. Joseph as a town road, at the expense of the

defendants, within a reasonable time after the last tract of land was sold from defendants to prospective purchasers, which last tract of land was sold in 1976 . . . ." The damages sought by plaintiffs are "damages in the amount of Sixty Thousand Dollars ($60,000) from defendants, plus costs, disbursements and reasonable attorney's fees or, in the alternative, other such equitable relief as may be allowed by law or equity . . . ."

The Johnstons' answer to the amended complaint put all matters in issue and they served a third-party complaint on the Town of St. Joseph and the named officers.

The third-party complaint alleges dedication of the road in June of 1972 and that at the June 9, 1972, meeting the town board accepted the dedication by vote. The allegation is the acceptance vote was reaffirmed at the April 5, 1973, town meeting. In addition, the third-party complaint alleges the road has been used since construction in 1972 by the general public as a public thoroughfare and such use constitutes further acceptance by the public of the dedication. As relief the third-party complaint states: "That if judgment is awarded to plaintiffs against defendants, then defendants are entitled to judgment by way of contribution and/or indemnity against third-party defendants."

The town board exercises a legislative function in determinig whether or not to accept a road and may not be sued in failing to so decide. Sec. 895.43 (4), Stats. 1977.[3]

---

[3] Sec. 895.43 (4), Stats. 1977, provided:

"(4) No suit may be brought against any volunteer fire company organized under ch. 213, political corporation, governmental subdivision or any agency thereof for the intentional torts of its officers, officials, agents or employes nor may any suit be brought against such corporation, subdivision or agency or volunteer fire company or against its officers, officials, agents or employes for acts done in the exercise of legislative, quasi-legislative, judicial or quasi-judicial functions."

However, if it is found the town determined the terms of its acceptance as is the allegation here, then the town's exercise of discretion ceased. If the trier of fact determines the condition for acceptance were met in a timely fashion, then the road became a town road with no further discretion involved. The factfinder may find these conditions were met before any new condition of acceptance became effective, *i.e.*, blacktopping the road. It is for a factfinder to determine the facts which are not resolvable properly in this motion for summary judgment. The minutes of the town board's meetings are not clear on any ruling by board members that the conditions of acceptance were not fulfilled timely before any further conditions were sought to be imposed.

At this stage of the case, sec. 895.43(4), Stats. 1977, does not bar Johnstons' third-party action against the defendants.

Third-party defendants also allege the Johnstons did not give timely notice under sec. 895.43(1)(a), Stats. 1977,[4] and are therefore barred from seeking relief.

Sec. 895.43(4), Stats. 1977, was renumbered by Bill 26–A, Laws of 1979, and is now sec. 893.80(4).,

[4] Sec. 895.43(1)(a), Stats. 1977, provided:

"**895.43 Claims against political corporations, governmental subdivisions or agencies and officers, agents or employes; notice of injury; limitation of damages and suits.** (1) No action may be brought or maintained against any volunteer fire company organized under ch. 213, political corporation, governmental subdivision or agency thereof nor against any officer, official, agent or employe of the corporation, subdivision or agency for acts done in their official capacity or in the course of their agency or employment upon a claim or cause of action unless:

"(a) Within 120 days after the happening of the event giving rise to the claim, written notice of the circumstances of the claim signed by the party, agent or attorney is served on the volunteer fire company, political corporation, governmental subdivision or agency and on the officer, official, agent or employe under s. 801.11. Failure to give the requisite notice shall not bar action on

However, that statute assumes a specific date for the happening of an event giving rise to a claim and that is not applicable to a cause of action, as here, for contribution and/or indemnification.

As we have previously held in *Hennington v. Valuch*, 19 Wis. 2d 260, 262, 120 N.W.2d 44 (1963) :

"In a recent federal case, *Bosin v. Minneapolis, St. P. & S. S. M. R. Co.* (1960), 183 Fed. Supp. 820, the court held that a defendant railroad company, cross-complaining against the city of Fond du Lac for contribution, did not have to comply with the filing requirements of sec. 62.25 (1) (a), Stats. That case was appealed to the circuit court of appeals for the Seventh circuit, and was affirmed. *Minneapolis, St. P. & S. S. M. R. Co. v. Fond du Lac* (7th Cir. 1961), 297 Fed. 2d 583."

This ruling was reaffirmed by this court in *Armour v. Wisconsin Gas Co.*, 54 Wis. 2d 302, 312, 195 N.W.2d 620 (1972).

In *Hennington*, 19 Wis. 2d at 263, this court also stated :

"These cases dealt with efforts to sue for contribution. On principle, there is no reason why the rule should not be the same in an attempted cross complaint for indemnification grounded in tort."

As we said in *Geiger v. Calumet County*, 18 Wis. 2d 151, 154–55, 118 N.W.2d 197 (1962) :

"A significant facet of the *Ainsworth Case* is that it overruled *Palmer v. Autoist Mut. Ins. Co.* (1940), 234

the claim if the fire company, corporation, subdivision or agency had actual notice of the claim and the claimant shows to the satisfaction of the court that the delay or failure to give the requisite notice has not been prejudicial to the defendant fire company, corporation, subdivision or agency or to the defendant officer, official, agent or employe; and"

Sec. 895.43 (1), Stats. 1977, was renumbered by Bill 26–A, Laws of 1979, and is now sec. 893.80 (1).

Wis. 287, 291 N.W. 364, which had adopted the argument here advanced by Brown county, vix.: The giving of the notice of injury was a condition precedent to liability, and, without the notice having been given, there could be no common liability. In answer to this argument, the court stated in *Ainsworth, supra,* at pages 445, 445a:

" 'With respect to the equitable right to contribution arising in automobile cases, it clearly has its origin in the joint misconduct of the negligent parties at the time of the accident. It remains an inchoate right until such time as one of the joint tort-feasors pays more than his fair share of the total damages resulting from such joint negligence, at which time it ripens into a right to legal action to recover therefor. . . .

" 'As was said by the court in the *Palmer Case, supra,* there is no provision in the statute requiring one joint tort-feasor to serve notice upon the other. Until suit is brought by the injured person there is no opportunity.' "

*See also, Coulson v. Larsen,* 94 Wis. 2d 56, 60, 287 N.W.2d 754 (1980).

The logic of that statement applies equally to a claim for indemnification in this contract case.

There are inferences and doubts in the facts as presented in the motion for summary judgment which were not resolved in the motion materials and, therefore, the motion should have been denied.

*By the Court.*—The decision of the court of appeals is reversed.