MAHNKE, Respondent, v. WISCONSIN EMPLOYMENT
RELATIONS COMMISSION, Appellant.

*No. 417. Argued January 6, 1975.—Decided February 4, 1975.*
(Also reported in 225 N. W. 2d 617.)

526

" . . .

528

For the appellant the cause was argued by *Charles D. Hoornstra,* assistant attorney general, with whom on the brief was *Robert W. Warren,* attorney general.

For the respondent there was a brief by *Neubecker, Kessler & McKnight,* attorneys, and *Edward F. Neubecker* of counsel, all of Milwaukee, and oral argument by *Edward F. Neubecker.*

BEILFUSS, J.   The parties do not state the issue in the same terms.   We believe the controlling issue to be: Where an employee alleges that his employer has discharged him in violation of a collective bargaining agreement and that his union has failed to proceed to arbitration under the terms of the collective bargaining agreement, does the employee have the burden of proof to establish a want of fair representation on the part of the union before he can proceed to the merits of his claim?

In *Vaca v. Sipes* (1967), 386 U. S. 171, 87 Sup. Ct. 903, 17 L. Ed. 2d 842, the court held that an employee who has failed to exhaust the exclusive grievance remedies is foreclosed from suing his employer on an arbitrable claim when his union refuses to pursue the grievance through all the steps of the grievance procedure.

The underlying assumption is that the grievance procedure is the exclusive remedy.   As stated in *Vaca, supra,* page 184, footnote 9:

"If a grievance and arbitration procedure is included in the contract, but the parties do not intend it to be the exclusive remedy, then a suit for breach of contract will normally be heard even though such procedures have not been exhausted.   See *Republic Steel Corp. v. Maddox,* 379 U. S. 650, 657–658 . . . ."

An examination of the *Republic Steel Corporation Case* [(1965), 379 U. S. 650, 657, 658, 85 Sup. Ct. 614, 13 L. Ed. 2d 580], however, reveals that the assumption is more akin to a presumption:

"The federal rule would not of course preclude Maddox' court suit if the parties to the collective bargaining agreement expressly agreed that arbitration was not the exclusive remedy. . . ."

In the instant contract there is no such express provision. A fair reading of it yields the distinct impression that the procedure was intended to be exclusive.

In *Vaca, supra,* the court stated at pages 184, 185:

". . . if the wrongfully discharged employee himself resorts to the courts before the grievance procedures have been fully exhausted, the employer may well defend on the ground that the exclusive remedies provided by such a contract have not been exhausted. Since the employee's claim is based upon breach of the collective bargaining agreement, he is bound by terms of that agreement which govern the manner in which contractual rights may be enforced. For this reason, it is settled that the employee must at least attempt to exhaust exclusive grievance and arbitration procedures established by the bargaining agreement. *Republic Steel Corp. v. Maddox,* 379 U. S. 650. However, because these contractual remedies have been devised and are often controlled by the union and the employer, they may well prove unsatisfactory or unworkable for the individual grievant. The problem then is to determine under what circumstances the individual employee may obtain judicial review of his breach-of-contract claim despite his failure to secure relief through the contractual remedial procedures."

This general rule clearly embodies the intent of Congress as codified in the Labor Management Relations Act, 29 U.S.C.A., sec. 173 (d):

"(d) Final adjustment by a method agreed upon by the parties is declared to be the desirable method for settlement of grievance disputes arising over the application or interpretation of an existing collective-bargaining agreement. . . ."

One of the situations where the employee may bring suit for enforcement of his contract right is where:

". . . the union has sole power under the contract to invoke the higher stages of the grievance procedure, *and* if, . . . the employee-plaintiff has been prevented from exhausting his contractual remedies by the union's *wrongful* refusal to process the grievance. . . ." *Vaca, supra,* page 185.

The rationale behind this rule is apparent. While both the employer and the union are benefited by an agreed grievance procedure which forestalls numerous and expensive forays into court to settle grievances, it is inequitable to allow an employee's claim to go without a remedy because of the union's wrongful refusal to process his claim. The *Vaca* decision makes it clear that a "wrongful refusal" occurs only when the union breaches its duty of fair representation and that:

"A breach of the statutory duty of fair representation occurs only when a union's conduct toward a member of the collective bargaining unit is arbitrary, discriminatory, or in bad faith." *Vaca, supra,* page 190.

Thus a union has considerable latitude in deciding whether to pursue a grievance through arbitration. As stated in *Humphrey v. Moore* (1964), 375 U. S. 335, 349, 84 Sup. Ct. 363, 11 L. Ed. 2d 370:

". . . 'Inevitably differences arise in the manner and degree to which the terms of any negotiated agreement affect individual employees and classes of employees. The mere existence of such differences does not make them invalid. The complete satisfaction of all who are represented is hardly to be expected. A wide range of reasonableness must be allowed a statutory bargaining representative in serving the unit it represents, subject always to complete good faith and honesty of purpose in the exercise of its discretion.' . . . Just as a union must be free to sift out wholly frivolous grievances which would only clog the grievance process, so it must be free to take a position on the not so frivolous disputes. . . ."

As stated in *Moore v. Sunbeam Corp.* (7th Cir. 1972), 459 Fed. 2d 811, 820:

"The Supreme Court in *Vaca* left no doubt that a union owes its members a duty of fair representation, but that opinion also makes it clear that the union may exercise discretion in deciding whether a grievance warrants arbitration. Even if an employee claim has merit, a union may properly reject it unless its action is arbitrary or taken in bad faith. . . ."

A similar view was taken by this court in *Fray v. Amalgamated Meat Cutters* (1960), 9 Wis. 2d 631, 641, 101 N. W. 2d 782, a pre-*Vaca Case* where this court held:

". . . The union has great discretion in processing the claims of its members, and only in extreme cases of abuse of discretion will courts interfere with the union's decision not to present an employee's grievance. See 44 Virginia Law Review (No. 8, 1958), 1337, 1338. In certain cases for the greater good of the members as a whole, some individual rights may have to be compromised. Whether or not a cause of action is stated depends upon the particular facts of each case. [Case cited.]."

The language in *Fray*, namely, "extreme cases of abuse of discretion," is probably too broad. The test is whether the action of the union was arbitrary or taken in bad faith in the performance of its duty of fair representation on behalf of its employee member.

However, while the *Vaca* decision recognizes that the employee has no absolute right to arbitration and that the mere fact that a union settles a grievance short of arbitration does not, without more, mean that it has breached its duty of fair representation and thus permit the employee to sue, the court does require, at page 194, that:

"In administering the grievance and arbitration machinery as statutory agent of the employees, a union must, in good faith and in a nonarbitrary manner, make decisions as to the merits of particular grievances."

If it is established that the grievance procedure provided for in the collective bargaining agreement has not been exhausted, then it must be proven that the union failed in its duty of fair representation before the employee can proceed to prosecute his claim against the employer. In *Clark v. Hein-Werner Corp.* (1959), 8 Wis. 2d 264, 272, 99 N. W. 2d 132, 100 N. W. 2d 317, we held that the union occupies a fiduciary relationship to its

members and stated "whether the union is performing its fiduciary duty of fair representation in an arbitration proceeding presents a question of fact."

The question before us here is who has the burden to establish this fact. We believe the employer is obligated in the first instance by way of an affirmative defense to allege that the contract grievance procedure has not been exhausted. If this fact has been established by proof, admission or stipulation, the employee cannot prosecute his claim unless he proves the union breached its duty of fair representation to him.

In this case the employer did affirmatively allege in its answer that the contract grievance procedure has not been exhausted. This allegation can be taken as a verity because the employee's complaint also alleged the union refused to submit his claim to arbitration under the agreement. At this stage it became necessary for the employee to come forward with sufficient proof to establish the union breached its duty of fair representation to him before he could pursue his claim based upon a violation of the collective bargaining agreement.

Not by evidence nor pleading, but by way of a pretrial statement or a statement of position requested by the examiner, counsel for the employee stated the reason the union did not pursue his grievance was that to do so would be too costly.[2] Upon inquiry by the examiner, counsel further stated that he was not going to allege the union's determination not to pursue the grievance to arbitration was based upon discrimination or an invidious motive. However, counsel did equivocate. Later, in a colloquy between himself and the examiner, he stated, "The Union has not acted in this matter, I don't think, in good faith."

---

[2] The contract grievance procedure provided the union and the employer would each pay one half the cost of arbitration.

Even though counsel, in his preliminary statement, quite clearly stated he was relying only upon the cost of arbitration or justification for the union's failure to exhaust the contract grievance procedures, we do not think in this case the employee should be foreclosed from establishing a want of fair representation, if he can.

We do not believe the United States Supreme Court intended a person in the position of Mahnke to be remediless. After twenty years of employment it is difficult to understand why, federal labor policy notwithstanding, he could be discharged, arguably in violation of his contract, and then denied a remedy merely because his union does not wish to spend the money necessary to vindicate his rights. *Vaca, supra,* provides that suit may be brought subsequent to an arbitrary, discriminatory or bad faith refusal to arbitrate by the union. *Vaca* also requires the union to make decisions as to the merits of each grievance. It is submitted that such decision should take into account at least the monetary value of his claim, the effect of the breach on the employee and the likelihood of success in arbitration. Absent such a good-faith determination, a decision not to arbitrate based solely on economic considerations could be arbitrary and a breach of the union's duty of fair representation.

This is not to suggest that every grievance must go to arbitration, but at least that the union must in good faith weigh the relevant factors before making such determination.

The WERC cites *Encina v. Tony Lama Co.* (W. D. Texas 1970), 316 Fed. Supp. 239, affirmed (5th Cir. 1971), 448 Fed. 2d 1264, for the proposition that cost of arbitration is a legitimate consideration as to whether to arbitrate. The case clearly stands for the proposition that a union is entitled "to take into account the expense of arbitration, the requirements of the collective agreement, and the highly speculative chance of prevailing." *Encina* at page 245. Thus the case is not inconsistent

with the view just expressed because factors other than costs alone entered into the decision.

This case should be remanded to the WERC to make a determination from all of the relevant evidence before it as to whether the union failed in its duty of fair representation to Harold Mahnke, its employee member. If it finds the union failed in its duty of fair representation then the employee should be permitted to pursue his claim. If the finding is that the union did not fail in its duty of fair representation, the employee will be foreclosed from further prosecution of his claim. The burden to establish the breach of a duty of fair representation is upon the employee Harold Mahnke.

*By the Court.*—Judgment affirmed with directions to remand the matter to the Wisconsin Employment Relations Commission for further proceedings not inconsistent with this opinion.