**MILLER BREWING COMPANY,**
Plaintiff,

v.

**BREWERY WORKERS LOCAL UNION NO. 9, DIRECTLY AFFILIATED LOCAL UNION, AFL–CIO, Defendant.**

Civ. A. No. 82–C–925.

United States District Court,
E.D. Wisconsin.

May 6, 1983.

George K. Whyte, Jr., Milwaukee, Wis., for plaintiff.

George F. Graf, James P. Maloney, Milwaukee, Wis., for defendant.

## DECISION AND ORDER

REYNOLDS, Chief Judge.

This is an action to vacate an arbitration award dated July 26, 1982, finding that the plaintiff Miller Brewing Co. had violated its collective bargaining agreement with the defendant Brewery Workers Local No. 9, Directly Affiliated Local Union, AFL–CIO, by recalling its temporary employees rather than preferentially hiring union members who lost their jobs at the Joseph Schlitz Brewing Co. when Schlitz closed its Milwaukee brewery. The arbitration award also required Miller to hire the former Schlitz employees who had applied for positions with Miller. The Union has filed a counterclaim seeking to confirm the arbitrator's decision.

Presently before the Court are the motion of Gary Lee Blawat, one of the temporary Miller employees who was recalled, to intervene as a third-party plaintiff, the motion of Blawat for class certification, and the motion of the defendant Union for summary judgment. The motion to intervene is opposed by the defendant Union and supported by the plaintiff Miller.

FACTS

The defendant Union was the certified representative for production employees of the Miller Brewing Co., Pabst Brewing Co., and Joseph Schlitz Brewing Co. These three companies constituted the Brewery Proprietors of Milwaukee, Wisconsin. The collective bargaining agreement entered into between the Union and the Brewery Proprietors effective from June 1, 1979 to June 1, 1981, in article I, set forth a recall procedure in which "regular employees laid off from other signatory Employers shall have preference in hiring before any such temporary employee is recalled."

Prior to the termination of the 1979–1981 collective bargaining agreement, the Joseph Schlitz Brewing Co. withdrew from the Brewery Proprietors to bargain separately with the Union over a contract covering June 1, 1981–June 1, 1983. Miller and Pabst, however, collectively bargained with the Union and on May 23, 1981 concluded a collective bargaining agreement effective from June 1, 1981 to June 1, 1983. The seniority provision of this new collective bargaining agreement provided in article I, section 5, that "regular employees laid off from other signatory employers or those employers signatory to the 1979–81 agreement shall have preference in hiring before any such temporary employee is recalled."

On June 1, 1981, the Union and Schlitz were without a contract and as a result, the Union went on strike against Schlitz. On July 31, 1981, Schlitz announced the permanent closing of its Milwaukee brewery effective September 30, 1981. Schlitz Brewing Co. sent its employees a Notice of Termination effective September 30, 1981. Subsequently, Schlitz and the Union entered into a shutdown agreement dated December 6, 1981.

On January 4, 1982 Miller Brewing Co. recalled 39 Miller "temporary" employees. Gene Pearson, a former Schlitz employee, filed a grievance alleging Miller Brewing Co. violated article I, section 5 of the labor agreement when Miller re-employed its temporary employees rather than hiring former Schlitz regular employees who lost their jobs when Schlitz closed its Milwaukee brewery. This grievance was processed through the grievance procedure set forth in the collective bargaining agreement without resolution.

The Union then demanded arbitration of the grievance and on May 14, 1982 a hearing was held before Arbitrator Edward B. Krinsky. On July 26, 1982, Arbitrator Ed-

ward B. Krinsky issued and delivered his award concluding that the regular employees of the Joseph Schlitz Brewing Co. were "laid off" within the meaning of the current labor agreement. The arbitrator determined that Miller had violated the agreement by recalling its temporary employees rather than granting preference to the permanently laid off Schlitz employees as required by article I of the collective bargaining agreement. Under article XXIV, section 3(a) of the collective bargaining agreement, the decision of the arbitrator is final and binding.

## MOTION TO INTERVENE

Gary Lee Blawat seeks to intervene as a third-party plaintiff against the Union. The remedy he seeks is the same as that sought by Miller—vacation of the arbitrator's award. Blawat's standing to intervene to challenge the arbitration award is affected not only by the requirements of Fed.R.Civ.P. 24, but also by substantive principles of federal labor law. *F.W. Woolworth Co. v. Miscellaneous Warehousemen's Union, Local No. 781,* 629 F.2d 1204, 1208 (7th Cir.1980) *cert. denied,* 451 U.S. 937, 101 S.Ct. 2016, 68 L.Ed.2d 324 (1981). In this case, substantive rules of federal labor law preclude intervention.

■ The general rule that has developed is that an employee may not attempt to vacate an arbitration award unless the union has breached its duty of fair representation. In *Acuff v. United Papermakers and Paperworkers, AFL–CIO,* 404 F.2d 169 (5th Cir.1968), *cert. denied* 394 U.S. 987, 89 S.Ct. 1466, 22 L.Ed.2d 762 (1969), the grievance of 63 discharged employees was submitted to arbitration after the Union brought an action to compel arbitration in the district court. The arbitrator denied the grievance of 16 employees and ordered that the discharge of the remaining employees be reduced to a disciplinary layoff. The sixteen employees whose grievances were denied and some of the other employees whose grievances were denied in part sought to intervene in the district court, which had retained jurisdiction, and to vacate the award.

The Fifth Circuit held that the employees could not intervene. The Court noted that the right to organize entails certain burdens. "One of these is that to some extent the interests of particular individuals are subordinated to the interests of the group both at the contract negotiation stage and thereafter.... As a result, a union may properly determine not to pursue a member's grievance to the arbitration stage at all." 404 F.2d at 171. The court qualified its holding, however, by stating that relief might be forthcoming if the union had breached its duty of fair representation.

The Ninth Circuit has also held that a fairly represented employee may not seek to vacate an arbitration award. *Andrus v. Convoy Co.,* 480 F.2d 604 (9th Cir.), *cert. denied* 414 U.S. 989, 94 S.Ct. 286, 38 L.Ed.2d 228 (1973).

The Seventh Circuit has allowed union members to intervene where they seek to uphold the arbitration award. In *F.W. Woolworth Co. v. Miscellaneous Warehousemen's Union, Local No. 781,* 629 F.2d 1204 (7th Cir.1980), *cert. denied* 451 U.S. 937, 101 S.Ct. 2016, 68 L.Ed.2d 324 (1981), the arbitration award was in favor of the discharged employees. The employer successfully prosecuted an action against the union to vacate the award. The union decided not to appeal the district court's ruling. Thereafter, the discharged employees sought to intervene and filed a notice of appeal. The district court denied their motion to intervene.

The Seventh Circuit summarized the applicable principles of substantive federal labor law as follows:

Thus under the system of collective bargaining mandated by the LMRA, the union (in contrast to the individual employees) is in control of the collective bargaining process and may, in the exercise of good faith and sound discretion, take employee grievances to various steps

of the grievance procedure, including the ultimate step of arbitration, so long as it does not violate its statutory duty of fair representation. *Vaca v. Sipes,* [386 U.S. 171, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967)]. The grievance procedure as such reaches its culmination in the arbitration award. But in addition, individual employees may not intervene in or maintain suits under the collective bargaining agreement to *set aside* arbitration awards reached in pursuance of the grievance procedure, *particularly in opposition to the union,* so long as the union has represented the employees fairly. *Acuff* and *Andrus,* both *supra.* These principles, and the policies underlying them, reflect the philosophy of collective bargaining incorporated in the LMRA and exemplify the fundamental policy of entrusting labor disputes and grievances to the good faith discretion of exclusive bargaining agents.

629 F.2d at 1210 (emphasis original).

The Seventh Circuit permitted intervention in *F.W. Woolworth Co.* only after weighing the factors for and against intervention and after examining whether intervention would conflict with any of the labor policies discussed in the cases. The court found four factors in favor of intervention: 1) that the employees were defending, not attacking the arbitration award; 2) that the union defended the award in the district court; 3) that the union did not object to intervention; and 4) that absent intervention, the employees may lose their day in court. The factors against intervention were that: 1) the union would no longer be an active participant; 2) the union might have ceded these claims to Woolworth in exchange for some other concession; and 3) the litigation would be prolonged.

█ In the present case, the only factor in favor of intervention is the fourth one noted in *F.W. Woolworth Co.* The remaining factors all weigh against intervention: the intervenors seek to vacate the arbitration award; the union opposes the award in the district court; and the union has object-

ed to intervention. Additionally, the second factor against intervention in *F.W. Woolworth Co.* expressly recognizes the union's discretion to reasonably pursue its collective interests at the expense of the interests of a subgroup of its members. That is precisely the choice the defendant Union made in deciding to pursue the grievance of the former Schlitz employees.

Further, all of the policy considerations noted by the Seventh Circuit militate against allowing intervention in this case. *See* 629 F.2d at 1212. In this case, intervention would increase the cost of the arbitration process and decrease the union's ability to decide what cases to submit to arbitration. Intervention would decrease the possibility that the arbitrator's decision would be upheld. Further, the union's interest in supervising the administration of the agreement will be injured and the union will incur additional costs in pursuing its position.

Inevitably, when a union decides to accept a grievance filed over the interpretation of a seniority provision in the collective bargaining agreement, it must decide that the provision works in favor of one group of its members and against another group. This does not entitle the members opposed to the union's position to intervene in the grievance procedure specified by the collective bargaining agreement. Their remedy, absent union action that would constitute unfair representation, is through the internal union procedures.

The proposed intervenor argues that because the union in this case took up the cause of the former Schlitz employees rather than the temporary Miller employees, as a matter of law the union has not provided the temporary Miller employees with fair representation. He relies upon *Clark v. Hein-Werner Corp.,* 8 Wis.2d 264, 272, 99 N.W.2d 132 (1960), which held that "where the interests of two groups of employees are diametrically opposed to each other and the union espouses the cause of one in the arbitration, it follows as a matter of law

that there has been no fair representation of the other group." *Clark* suggests that the Union's failure to represent the temporary Miller employees in the arbitration entitles those employees to claim unfair representation and therefore come within the exception to *F.W. Woolworth Co.*'s rule prohibiting intervention to vacate the arbitration award.

Nevertheless, *Clark* is not good law. Seven years after *Clark,* the Supreme Court clarified the standard for finding unfair representation. *Vaca v. Sipes,* 386 U.S. 171, 190, 87 S.Ct. 903, 916, 17 L.Ed.2d 842 (1967), held that "[a] breach of the statutory duty of fair representation occurs only when a union's conduct toward a member of the collective bargaining unit is arbitrary, discriminatory, or in bad faith." The proposed third-party complaint fails to allege any action of the union in connection with the arbitration that was arbitrary, discriminatory, or in bad faith.

The only allegations of the proposed third-party complaint that could possibly support an unfair representation claim by the proposed intervenor are contained in paragraphs 8 and 9, which read as follows:

8. That defendant, Brewery Workers Local Union 9 violated Sections 101(9)(1) and (2) of the Labor Management Reporting and Disclosure Act of 1959 by failing to submit changes in the seniority provision of the 1981–1983 Collective bargaining agreement to the union members when said defendant incorporated into the 1981–1983 Collective bargaining agreement the addition that Employers signatory to the 1979–81 agreement shall have preference in hiring before any such temporary employee is recalled.

9. That defendant Brewery Workers Local 9 violated 29 U.S.C. 411 and Article XI of the Constitution and By-Laws of Brewery Workers Local Union No. 9, which grants members a right to adopt and express views on the seniority change, by failing to disclose the proposed seniority change to the unions membership before approval of the contract which incorporated said changes.

These paragraphs vaguely allege that the manner in which the 1981–1983 collective bargaining agreement was adopted violated the rights of the proposed intervenor. However, even if these allegations would constitute unfair representation, they would not justify the intervention.

■ The alleged unfair representation is not such as would have tainted the arbitration process. In *Hines v. Anchor Motor Freight, Inc.,* 424 U.S. 554, 567, 96 S.Ct. 1048, 1057, 47 L.Ed.2d 231 (1976), the Supreme Court held that the union's breach of duty, "if it seriously undermines the integrity of the arbitral process ... also removes the bar of the finality provisions of the contract." Thus, where the union has breached its duty of fair representation, the grievance procedures need not be exhausted before court action is sought by the employees. However, results of the arbitration process which are final under the contract remain final unless the breach taints the arbitral process.

■ The only issue before the arbitrator was whether the former Schlitz employees were "laid off" as that term is used in the recall provision of article I, section 5 of the collective bargaining agreement. Once that decision is made, the meaning of the recall provision is clear. The alleged violation of rights in adopting the 1981–1983 contract in no way affect the integrity of the arbitration process. Thus, if the proposed third-party complaint does allege unfair representation by the Union, that allegation does not affect the integrity of the arbitration process and so the proposed intervenor lacks standing to sue to vacate the arbitration award.

Because the motion to intervene must be denied, the motion to certify the proposed intervenor as the representative of a class is moot.

UNION'S MOTION FOR SUMMARY JUDGMENT

The scope of this Court's review of the arbitration award is very narrow. As the

Supreme Court made clear in the *Steelworkers Trilogy—United Steelworkers of America v. American Manufacturing Co.,* 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960); *United Steelworkers of America v. Warrior & Gulf Navigation Co.,* 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960); *United Steelworkers of America v. Enterprise Wheel & Car Corp.,* 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960)—where the parties have bargained to submit disputes to final and binding arbitration, courts should refuse to review the merits of the award. The arbitration award is legitimate "so long as it draws its essence from the collective bargaining agreement." 363 U.S. at 597, 80 S.Ct. at 1361.

### A. Award Draws Its Essence from the Collective Bargaining Agreement

■ The plaintiff argues that the arbitrator's award does not draw its essence from the collective bargaining agreement because "[t]he arbitrator specifically found that the parties did not contemplate a complete plant closing in providing for hiring preference for laid off employees ..., but then proceeded to fill that explicit 'gap' by concluding that the intent of the hiring preference clause was to provide preference to any employee who lost employment through lack of work at another brewery." Memorandum in opposition to defendant's motion for summary judgment 6 [hereinafter cited as Plaintiff's Memorandum]. However, in context, the arbitrator's finding that the parties did not "contemplate" a plant closing does not indicate a finding by him that the agreement was not intended to cover the situation. Rather, the arbitrator's decision at 11 indicates that there was no indication that the intent of the agreement was to distinguish between layoffs and plant closings. Thus, that the parties did not expressly contemplate plant closings in the agreement does not imply that the arbitrator's award did not draw its essence from the agreement.

That the plaintiff seeks to have this Court review the merits of the arbitrator's decision is clear from the following page of the plaintiff's memorandum, where the plaintiff argues that "the contract draws an explicit distinction between terminations and layoffs." Where the contract draws such a distinction, the meaning of "termination" and "layoff" is a matter of contract interpretation. In fact, the plaintiff admits that the arbitrator's decision draws its essence from the agreement: "[T]he answer to the question whether employees of Schlitz who lost their jobs as a result of the closing of Schlitz Milwaukee plant were 'laid off' within the meaning of the current labor agreement ... is contained within the four corners of that agreement." Plaintiff's memorandum at 7. Thus, the plaintiff has failed to show that there is any genuine issue over whether the arbitrator's award draws its essence from the collective bargaining agreement.

### B. Union's Alleged Breach of its Duty of Fair Representation

The plaintiff next argues that summary judgment is inappropriate because there is a material issue as to whether the union breached its duty of fair representation to certain of the temporary Miller employees. The plaintiff claims that these employees were not informed of the change made in the preference provision of the 1981–1983 agreement, that they were not informed of the pending grievance by Schlitz employees who lost their jobs when Schlitz closed its plant, that those employees were not given notice of or a chance to participate in the arbitration proceeding, and that the Union refused to provide those employees with copies of the arbitrator's decision. Without examining all of the affidavits submitted to see whether a genuine issue exists on each of these claims, the Court holds that these claims do not provide a basis upon which this Court may vacate the arbitrator's award.

■ First, the plaintiff does not have standing to complain of any unfair repre-

sentation by the union. The plaintiff does not claim that the arbitration procedure followed by the union was contrary to the collective bargaining agreement or that the alleged unfair representation affected the integrity of the arbitration process.

■ Second, in considering the motion to intervene, this Court has already held that the temporary employees had no right to intervene against the Union. This reasoning equally indicates that they had no right to intervene in the arbitration proceedings. Any claims that the union did not adequately inform or notify the temporary employees would affect the arbitral process only if the temporary employees had a right to intervene in the process.

C. Enforcement of an Unfair Labor Practice

Next, the plaintiff claims that the preference provision of the agreement may be illegal under § 8 of the Labor Management Relations Act, 29 U.S.C. § 158, and that this Court should not confirm the arbitration award until the National Labor Relations Board determines the merits of that charge. Miller filed the charge with the NLRB on January 19, 1983, two days after the defendant filed its motion for summary judgment. Resolution of this issue requires that this Court reconcile the primary jurisdiction of the NLRB over unfair labor practices with this Court's jurisdiction over actions brought under § 301 of the Labor Management Relations Act.

■ In *San Diego Building Trades Council v. Garmon,* 359 U.S. 236, 79 S.Ct. 773, 3 L.Ed.2d 775 (1959), the Supreme Court held that where activity is arguably subject to § 7 or § 8 of the National Labor Relations Act, the NLRB has primary jurisdiction, exclusive of the state and federal courts. However, where the activity also violates a collective bargaining agreement, the jurisdiction of the NLRB is not exclusive and does not divest the district court of its jurisdiction over suits under § 301. *E.g.*

*Smith v. Evening News Association,* 371 U.S. 195, 83 S.Ct. 267, 9 L.Ed.2d 246 (1962). The Court exempted § 301 suits from the *Garmon* principle "because of the evident congressional determination that courts should be free to interpret and enforce collective bargaining agreements even where that process may involve condemning or permitting conduct arguably subject to the protection or prohibition of the National Labor Relations Act." *Amalgamated Association of Street, Electric Railway & Motor Coach Employees of America v. Lockridge,* 403 U.S. 274, 300, 91 S.Ct. 1909, 1924, 29 L.Ed.2d 473 (1971).

■ While this Court has jurisdiction under § 301 to determine whether certain activity violated the collective bargaining agreement, even where that activity may be subject to the NLRA, this Court does not have jurisdiction to determine whether certain conduct constitutes an unfair labor practice under § 8 of the NLRA. In *Orange Belt District Council of Painters No. 48 v. Maloney Specialties, Inc.,* 639 F.2d 487, 491 (9th Cir.1980), the court held that it is no defense to a § 301 enforcement action that enforcement of the arbitration award would compel an unfair labor practice: " '[T]he NLRB's primary jurisdiction precludes federal courts from acting as the initial arbiters of unfair labor practice charges in section 301 actions.' " (quoting *Waggoner v. R. McGray, Inc.,* 607 F.2d 1229, 1231 (9th Cir.1979)). The court reasoned that if such a defense were allowed there would be nothing left of the NLRB's primary jurisdiction over § 8 cases. 639 F.2d at 491 (quoting *Mullins v. Kaiser Steel Corp.,* 642 F.2d 1302 (D.C.Cir.1980)).

The holding of *Orange Belt* is also consistent with the congressional policies underlying the NLRA and § 301. With respect to the primary jurisdiction of the NLRB, the Supreme Court has observed that "Congress evidently considered that centralized administration of specially designed procedures was necessary to obtain uniform application of its substantive

rules." *Garner v. Teamsters, Chauffeurs and Helpers Local Union No. 776,* 346 U.S. 485, 490, 74 S.Ct. 161, 166, 98 L.Ed. 228 (1953). Were the courts to rule on unfair labor practices, even though only as a defense to § 301 actions, this uniform application of the NLRA would be lost. Nonetheless, the congressional intent under § 301 that courts interpret and enforce collective bargaining agreements requires that the district courts have jurisdiction where the disputed conduct may not only violate the contract but may also be an unfair labor practice.

Of course, the cost of uniform application of the NLRA is that the district courts may compel action that the NLRB later holds constitutes an unfair labor practice. But the Supreme Court has foreseen such conflicts. Thus, in the language quoted above from *Lockridge,* the Court acknowledged that the district court may find itself "condemning or permitting conduct arguably subject to the protection or prohibition of the National Labor Relations Act." 403 U.S. at 300, 91 S.Ct. at 1925. In *Carey v. Westinghouse Electric Corp.,* 375 U.S. 261, 84 S.Ct. 401, 11 L.Ed.2d 320 (1964), the Court held that arbitration could be compelled even where the NLRB may have jurisdiction over the dispute. The Court admitted that "awards concerning unfair labor practices[ ] may later end up in conflict with Board rulings," but noted that "the Board's ruling would, of course, take precedence." 375 U.S. at 272, 84 S.Ct. at 409. Although *Carey* only involved a possible conflict between the Board and an arbitrator, the principle should apply equally to a court enforced arbitration award. This is implicit in *Carey's* reference to their holding in *Smith* that the possibility of conflict is no barrier to resort to a tribunal (there the district court) other than the Board. 375 U.S. at 272, 84 S.Ct. at 409.

■ A further implication of the quoted language from *Carey,* however, is that where the Board has ruled on the matter, courts will defer to its ruling. Thus, a prior ruling by the Board that particular activity constitutes an unfair labor practice will constitute a good defense to a § 301 action in which enforcement would compel the unfair labor practice. In this case, the court is not acting as the "initial arbiter" of the unfair practice charge but rather is recognizing the precedence of the Board's determination. Indeed, even the scope of the *Garmon* principle is delimited by clear determinations of the Board: "In the absence of the Board's determination that an activity is neither protected nor prohibited or of compelling precedent applied to essentially undisputed facts, it is not for this Court to decide whether such activities are subject to state jurisdiction." *Garmon,* 359 U.S. at 246, 79 S.Ct. at 780. Thus, *Garmon* does not preclude this Court from recognizing an unfair labor practice where the Board has adjudicated the matter or where precedent is clear. Each of the cases relied on by the plaintiff for the proposition that this court may look at whether the activity constituted an unfair labor practice were cases in which the Board had previously ruled on the matter.

■ The alleged unfair labor practice in this case is that the recall preference of article I, section 5, of the collective bargaining agreement, when combined with the contract's union security clause, results in a hiring preference which discriminates in favor of union members. The Court has recently been informed that the NLRB has acted on Miller's charge. On March 4, 1983, the defendant filed with the Court a copy of a letter from George Squillacote, Regional Director of the NLRB, to George Whyte, counsel for Miller. In that letter, Mr. Squillacote indicated that their investigation failed to show any violation of § 8, and that he was refusing to issue a complaint in the matter. The plaintiff has not indicated whether it will seek review of Mr. Squillacote's determination.

Thus, both on the basis of this Court's lack of jurisdiction to examine whether certain activity constitutes an unfair labor

practice and on the basis of the Regional Director's decision not to issue a complaint in this matter, the unfair labor practice defense must fail.

## D. Remedy Within Arbitrator's Jurisdiction

The plaintiff complains that the arbitrator exceeded his jurisdiction by ordering the relief he granted. The arbitrator ordered Miller to hire Gene Pearson and any other employees similarly situated. Miller argues that by ordering Miller to hire these employees, rather than simply ordering Miller to give them preference, the arbitrator's remedy went beyond the clear language of the contract so that the award fails to draw its essence from the contract.

Miller relies on *Milwaukee Typographical Union No. 23 v. Newspapers, Inc.*, 639 F.2d 386 (7th Cir.), *cert. denied,* 454 U.S. 838, 102 S.Ct. 144, 70 L.Ed.2d 119 (1981). There, the employer newspaper publisher had installed a video display terminal system in its editorial departments, which introduced electronic preparation, editing and transmission of newspaper copy. The union, representing the composing room employees, sought to compel the employer to negotiate about the system's impact. The arbitrator decided that while the employer could install the system, the collective bargaining agreement obliged the employer to negotiate with the union over the system's "impact."

The arbitrator's authority over the matter derived from a "new process" clause in the contract which required that when certain new processes were introduced, "all questions concerned with the method of operation, the complement of men required or the retraining of affected employees shall be determined by the Joint Standing Committee." 639 F.2d at 393. The Seventh Circuit held that the arbitrator's order that the employer negotiate over the "impact" of the system did not draw its essence from the contract and therefore was beyond the arbitrator's jurisdiction.

█ This case does not come within the admonitions of *Newspapers, Inc.* for two reasons. First, the arbitrator's award in this case is remedial, not prospective as in *Newspapers, Inc.* The arbitrator is not ordering Miller to do something more than what is required by clear terms of the contract, but rather is ordering Miller to put the affected employees in the same position they would have been in had Miller properly followed the terms of the contract. This is no different than where an arbitrator orders the employer to rehire an improperly discharged employee. Once the arbitrator finds a violation of the contract, it is within his jurisdiction to create an appropriate remedy.

Second, read as a whole, the arbitrator's award does not order Miller to do anything more than they were required to do under the contract. The arbitrator's award for the violation provided:

> The Company is hereby ordered to hire Gene Pearson effective January 4, 1982 and any other employes similarly situated *who had applications on file at the Company and who were not given hiring preference over temporary Miller employees,* and make him (them) whole with back pay and contractual benefits, less any earnings which would not have been earned had hiring preference been given.

Arbitration award at 15–16 (emphasis added). The effect of the order is to put those employees who were wrongly denied preference in the same position as they would have been but for the wrongful denial of preference. The effect of the order does not go beyond that. Therefore, the arbitrator did not exceed his jurisdiction.

## E. Public Policy

█ Miller's last argument is that the award violates clear public policy and therefore should not be enforced. In *Local No. P–1236, Amalgamated Meat Cutters & Butcher Workmen of North America, AFL–CIO v. Jones Dairy Farm,* 680 F.2d 1142 (7th Cir.1982), the court held that the clear public policy to prevent adulterated meat through maintenance of sanitary standards

precluded enforcement of an arbitration award upholding an employer's rule prohibiting employees from contacting United States Department of Agriculture inspectors in any circumstances. The court stated that "when a court bars enforcement of an arbitration award on the basis of public policy, that public policy must be clearly defined." 680 F.2d at 1145. In this action, the plaintiff has failed to demonstrate any clearly defined public policy that would be violated through enforcement of the arbitrator's award. The plaintiff's memorandum at 17 refers to the "clear public policy recognizing the rights of employees in a given bargaining unit over the rights of strangers to that bargaining unit" and at 19 refers again to the allegations of unfair representation. Certainly any public policy argument based on labor policy cannot stand up to the clear public policy in favor of resolving disputes through arbitration. This Court finds no clearly defined public policy that would be violated through enforcement of the arbitration award in this case.

Because this Court finds that the arbitrator's award draws its essence from the contract and that there is no meritorious defense to enforcement of the award, the defendant's motion for summary judgment must be granted.

ATTORNEY FEES

█ The Union has also moved this Court to award attorney fees against the plaintiff. Such an award against a party who fails to abide by an arbitrator's award is appropriate where that party's position is "wholly devoid of merit." *Amoco Oil Co. v. Oil, Chemical and Atomic Workers International Union, Local 7–1, Inc.,* 548 F.2d 1288, 1296 (7th Cir.), *cert. denied,* 431 U.S. 905, 97 S.Ct. 1697, 52 L.Ed.2d 389 (1977).

In this action, the employer's arguments are all wholly devoid of merit. The only argument that gives this Court pause in awarding attorney's fees is the asserted unfair labor practice defense. Nonetheless, while it was necessary to carefully examine whether this court had any jurisdiction to consider the defense, precedent clearly indicates that courts may not in the first instance consider a claim of unfair labor practice. Thus, even this asserted defense was wholly without merit.

THEREFORE, IT IS ORDERED that:

1. The motion of Gary Lee Blawat to intervene in this action is denied and his motion for class certification is deemed moot.

2. The defendant's motion for summary judgment is granted. Judgment shall be entered dismissing the complaint, directing the plaintiff to specifically perform the labor arbitration award of Edward B. Krinsky issued on July 26, 1982 in the Matter of Arbitration between Miller Brewing Co. and Brewery Workers Local Union No. 9, confirming that award, awarding interest from the date of the arbitration award on all sums due and owing, and awarding the defendants costs and reasonable attorney fees.