Jeffrey GRAY, Plaintiff-Appellant,†

v.

MARINETTE COUNTY, American Federation of State, County and Municipal Employees, AFL-CIO, Stephen Fredericks, and James J. Kanikula, Defendants-Respondents.

Court of Appeals

*No. 95–1906–FT. Submitted on briefs January 2, 1996.—Decided February 27, 1996.*

(Also reported in 546 N.W.2d 553.)

†Petition to review denied.

On behalf of the plaintiff-appellant, the cause was submitted on the brief of *Clay F. Teasdale* of *Murphy & Teasdale* of Marinette.

On behalf of the defendant-respondent, American Federation of State, County, and Municipal Employees, AFL-CIO, the cause was submitted on the brief of *Bruce F. Ehlke* and *Aaron N. Halstead* of *Shneidman, Myers, Dowling & Blumenfield* of Madison.

On behalf of the defendants-respondents, Marinette County, Stephen Fredericks and James J. Kanikula, the cause was submitted on the brief of *James R. Scott* and *Thomas W. Mackenzie* of *Lindner & Marsack, S.C.* of Milwaukee.

Before Cane, P.J., LaRocque and Myse, JJ.

CANE, P.J. Jeffrey Gray appeals a summary judgment dismissing his complaint against Marinette County and his union alleging violations of the parties' collective bargaining agreement and Gray's constitutionally-protected rights.[1] Gray argues there are disputed issues of material fact, and that even if there are no disputed material facts, the County and the union are not entitled to judgment as a matter of law. Because we conclude there are no disputed issues of material fact and that the union and the County are entitled to judgment as a matter of law, we affirm.

According to the undisputed parts of the record, in 1990 the County advertised that it had openings for a Civilian Corrections Officer (CCO) in the Marinette County jail. According to an affidavit from the chief deputy of the sheriff's department, in order to qualify for a position, 1990 and 1991 applicants had to pass a written jailer examination administered by the Wisconsin Department of Employment Relations. Chris Mosconi, an employee in the Marinette County Parks Department, took the written jailer examination in 1990, failed to pass it and was not hired for a CCO position.

In 1991, the County again advertised that it had positions available. Gray applied and took the jailer examination, but did not pass. However, Gray was hired by the County as a part-time CCO effective May 15, 1991. After his probation period expired, Gray became a dues-paying member of the union. In December of 1992, Gray signed a posting advertising a full-time position as CCO and was given the job. Effective December 4, 1992, Gray was employed as a full-time CCO.

---

[1] This is an expedited appeal under RULE 809.17, STATS.

In February 1993, Mosconi signed a posting for a part-time CCO position. On February 12, 1993, the union filed a grievance on behalf of Mosconi, stating Mosconi did not pass the required test for the position and was "overlooked and not hired." The grievance alleged that "at this time, Mr. Mosconi has learned that the person hired for another Correction Officer position had also failed the test."

While Mosconi's grievance was denied at the first steps of the contractual grievance procedure under the parties' collective bargaining agreement, the County and the union settled the grievance before binding arbitration could begin. The settlement agreement provided:

> 1. Chris Mosconi will be made a full time Corrections Officer upon hiring.
>
> 2. Jeff Gray will become a part time Corrections Officer upon Chris Mosconi being hired.
>
> 3. Mosconi will have seniority over Jeff Gray during the time period both are employed at the Marinette County Jail.
>
> 4. Mosconi agrees to waive any claims for back pay, insurance coverage, etc. for the time this grievance was pending, and for any prior time period.
>
> 5. Gray has the option to take the written test for Corrections Officer. If he passes that test, he can then continue his employment as a Corrections Officer. If he fails that test or chooses not to re-test, he will have the option of remaining as a Corrections Officer for one year from the date of this agreement. During that year, he agrees to exercise his rights to post for future openings within Local 1752 for which he is qualified. If he is not successful

in posting for another position during that year, he will be laid off at the end of that year.

6. Mosconi will start employment as a Corrections Officer effective June 14, 1993.

Gray was given the opportunity to sign this agreement, but elected not to do so. Instead, Gray approached two union representatives and asked them to file a grievance on his behalf because his hours had been reduced to part-time. The representatives discussed this request with Gray, the County and other union members, and determined there was no basis to file a grievance.

Gray, through his attorney, filed a written request with the County administrator, asking that the County proceed with the grievance procedure under the collective bargaining agreement, and schedule a meeting for all the parties. County corporation counsel responded, stating that the union had exclusive jurisdiction over the matter and, if the union decided the grievance had no merit, then Gray had no standing to pursue the matter under the collective bargaining agreement.

Gray filed an action in Marinette County Circuit Court, alleging: (1) the County violated the collective bargaining agreement by changing Gray's employment status and by refusing to proceed with the grievance procedure; (2) the union breached its duty and responsibility to fairly represent Gray by not pursuing grievance remedies; (3) Gray had been deprived of rights, privileges and immunities guaranteed by the constitution; and (4) Gray had been deprived of property without due process of law.

The union and the County petitioned to remove the case to federal court because Gray had alleged violations of his constitutionally-protected rights. Gray filed

a motion to remand, which was granted by the Eastern District of Wisconsin. Back in state court, the County moved for summary judgment. The union moved to dismiss for failure to state a claim and, alternatively, for summary judgment. The trial court granted defendants' motion for summary judgment on all claims and dismissed Gray's complaint. Gray now appeals.

When reviewing a grant of summary judgment, appellate courts independently apply the same methodology as the trial court. *Kloes v. Eau Claire Cavalier Baseball Ass'n*, 170 Wis. 2d 77, 83, 487 N.W.2d 77, 79-80 (Ct. App. 1992). That methodology has been set forth numerous times, and we need not repeat it here. *See Grams v. Boss*, 97 Wis. 2d 332, 338, 294 N.W.2d 473, 476 (1980); § 802.02(2), STATS. Summary judgment is appropriate when material facts are undisputed and when inferences that may be reasonably drawn from the facts are not doubtful and lead only to one conclusion. *Radlein v. Industrial Fire & Cas. Ins. Co.*, 117 Wis. 2d 605, 609, 345 N.W.2d 874, 877 (1984). To defeat a summary judgment motion, the alleged factual dispute must concern a fact that affects the resolution of the controversy, and the evidence must be such that a reasonable jury could return a verdict for the nonmoving party. *Baxter v. DNR*, 165 Wis. 2d 298, 312, 477 N.W.2d 648, 654 (Ct. App. 1991). Any reasonable doubt as to the existence of disputed material fact is resolved against the moving party. *Heck & Paetow Claim Serv., Inc. v. Heck*, 93 Wis. 2d 349, 356, 286 N.W.2d 831, 834 (1980).

The union and the County do not dispute the trial court's conclusion that Gray has stated a claim upon

which relief could be granted.[2] Additionally, Gray does not argue that the County and the union failed to make a prima facie case for summary judgment under § 802.08(2), STATS. To make a prima facie showing for summary judgment, a moving defendant must show a defense which would defeat the plaintiff. *Voss v. City of Middleton,* 162 Wis. 2d 737, 748, 470 N.W.2d 625, 629 (1991). Here, the County's defense was that it had no obligation to hear Gray's claim because the union had not pursued it and, furthermore, that it did not violate the collective bargaining agreement. The union's defense was that it had not breached its duty of fair representation, and it provided two affidavits from union representatives detailing the procedure they used to process Gray's grievance.

If the moving parties have made a prima facie case for summary judgment, the court must examine the opposing party's affidavits and other proof to determine whether there exist disputed material facts or undisputed material facts from which reasonable alternative inferences may be drawn sufficient to entitle the opposing party to a trial. *Id.* Thus, we must examine the parties' affidavits and determine whether there are disputed material facts or whether alternative inferences can be drawn from the undisputed facts. Gray's claims can be divided into three areas: (1) the grievance procedure; (2) the County's demotion of Gray; and (3) constitutional claims. We begin by analyzing the grievance procedure.

---

[2] The union notes that the trial court did not grant its motion to dismiss, although the trial court indicated that the complaint was deficient.

## THE GRIEVANCE PROCEDURE

The collective bargaining agreement between the union and the County set forth the grievance procedure for disputes. The union is the exclusive bargaining representative for its members and because the grievance procedure is an integral part of the collective bargaining process, the union's exclusive agency continues with respect to the procedures designed to enforce the collective bargaining agreement—the grievance and arbitration provisions. *Hanson v. Madison Serv. Corp.*, 150 Wis. 2d 828, 836-37, 443 N.W.2d 315, 318 (Ct. App. 1989). As a result, an employee does not have the right to compel his or her employer to meet with him or her to adjust a grievance where, as here, the collective bargaining agreement gives the union control over the grievance machinery. *Id.* at 837, 443 N.W.2d at 318. In such a situation, the employee must rely on the union to exhaust his or her contractual remedies.[3] *Id.* Grievance and arbitration procedures included in a collective bargaining agreement are presumed to be exclusive remedies unless the parties to the agreement expressly agree they are not. *Racine Educ. Ass'n v. Racine Unified School Dist.*, 176 Wis. 2d 273, 281, 500 N.W.2d 379, 382 (Ct. App. 1993).

Our review of the collective bargaining agreement reveals no alternative remedy and no party argues there is one. Thus, we must analyze the collective bar-

---

[3] However, if the employee proves the union breached its duty of fair representation, the employee can proceed directly against the employer on a claim for breach of the collective bargaining agreement. *See Mahnke v. WERC*, 66 Wis. 2d 524, 532-33, 225 N.W.2d 617, 622-23 (1975), discussed later in this opinion.

gaining agreement to determine Gray's right to proceed with a grievance. The agreement provides the following grievance procedure, reprinted in part:

> Grievance Procedure. Should differences arise between the Employer and Employees or the Union, this procedure shall be followed:
> Step 1: Any Employee covered by this Agreement who has a grievance shall report h/er grievance to the steward or other representative of the Union within ten (10) work days, who shall investigate the grievance thoroughly, and if the Union feels the grievance is warranted, the Union shall request a meeting with the department head within five (5) work days. The department head shall give h/er answer to the Union in writing within three (3) work days of this meeting.
> Step 2: In the event the grievance cannot be satisfactorily settled in Step 1, the grievant may appeal in writing by submitting a letter or memo to the County Administrator within ten (10) working days of the disposition by the Department Head. The County Administrator shall meet with the grievant, union representatives and the Department Head to discuss the grievance, and shall provide a written answer within ten (10) working days after the meeting.

This section's plain language indicates that an employee has the right to report a grievance to a union steward. Gray argues that, additionally, if the union does not feel the grievance is warranted and therefore does not meet with the department head, the employee has the right to take his or her grievance to the County administrator, because step two provides: "[T]he grievant may appeal in writing by submitting a letter or memo to the County Administrator . . . ." Gray's interpretation of this sentence ignores the final words of the

437

sentence, "within ten (10) working days of the disposi-
tion by the Department Head." The entire sentence
implies that *if* the union had taken the grievance to the
department head and the department head had issued
an unfavorable ruling, only then would the grievant
have the right to appeal to the County administrator
within ten working days. Thus, if the union has not
taken a grievance to a department head in step one, the
grievant has no option to continue with the grievance
procedure.

In this case, it is undisputed that the union did not
take Gray's grievance to the department head. Instead,
Gray acknowledged in his letter to the County adminis-
trator that he was attempting to proceed under step
two, "even though the sheriff has not responded in
writing as required under Step 1." Under the plain
meaning of the collective bargaining agreement, there
is no authority for Gray to proceed under the grievance
procedure because the union did not initially take the
grievance to the department head.

Gray argues that even if the grievance procedure
as written does not allow him to proceed against the
County, he should be allowed to do so because one
sentence of § 111.70(4)(d), STATS., gives him the right to
present grievances directly to his employer. Section
111.70 provides in relevant part:

> **(4) Powers of the commission** [Wisconsin
> Employment Relations Commission]. The commis-
> sion shall be governed by the following provisions
> relating to bargaining in municipal employment in
> addition to other powers and duties provided in this
> subchapter:
>
> . . . .

(d) Selection of representatives and determination of appropriate units for collective bargaining.

1. A representative chosen for the purposes of collective bargaining by a majority of the municipal employes voting in a collective bargaining unit shall be the exclusive representative of all employes in the unit for the purpose of collective bargaining. *Any individual employe, or any minority group of employes in any collective bargaining unit, shall have the right to present grievances to the municipal employer in person or through representatives of their own choosing, and the municipal employer shall confer with said employe in relation thereto,* if the majority representative has been afforded the opportunity to be present at the conferences. Any adjustment resulting from these conferences shall not be inconsistent with the conditions of employment established by the majority representative and the municipal employer. (Emphasis added.)

The County argues Gray's reliance on § 111.70(4)(d), STATS., in this context is unwarranted and incorrect. The County notes:

When the Legislature identified a duly elected labor organization as the exclusive representative of the employees in the bargaining unit, it also noted that "exclusivity" does not bar individual employees from presenting "grievances." . . . Gray incorrectly assumes that the use of the term "grievance" in this context is synonymous with a "grievance" under a contractual grievance/arbitration clause . . . .

We agree with the County. Section 111.70(4)(d), STATS., deals with the rights of an employee or minority group to participate in the collective bargaining process, not with the rights of an employee to proceed directly against the employer for a breach of the collective bar-

gaining agreement. Therefore, the statute does not provide Gray with an independent basis to proceed against the County directly.

Because the undisputed facts reveal that Gray has no right under the grievance procedure or § 111.70(4)(d), STATS., to proceed directly against the County, his claim that the County violated the collective bargaining agreement must be dismissed, unless Gray is able to establish another means of taking his case against the County to circuit court. In *Mahnke v. WERC*, 66 Wis. 2d 524, 225 N.W.2d 617 (1975), our supreme court recognized that one of the situations where the employee may bring suit to enforce his contract right is where the union has sole power under the contract to invoke the higher stages of the grievance procedures and where the employee has been prevented from exhausting his contractual remedies by the union's wrongful refusal to process the grievance. *Id.* at 529, 225 N.W.2d at 621 (citing *Vaca v. Sipes*, 386 U.S. 171, 185 (1967)). *Mahnke* noted:

> The *Vaca* decision makes it clear that a "wrongful refusal" occurs only when the union breaches its duty of fair representation and that:
> "A breach of the statutory duty of fair representation occurs only when a union's conduct toward a member of the collective bargaining unit is arbitrary, discriminatory, or in bad faith."

*Mahnke*, 66 Wis. 2d at 531, 225 N.W.2d at 622 (quoting *Vaca*, 386 U.S. at 190). The County agrees *Mahnke* controls, stating, "[B]efore a unionized employee can proceed with a breach of contract claim against his employer, he must establish that the Union breached its duty of fair representation in failing to pursue his

440

grievance through the contractual grievance procedure."

Thus, we must analyze Gray's claim that the union breached its duty of fair representation by not pursuing grievance remedies because Gray has stated a claim against the union based on a breach of its duty, and because Gray cannot proceed against the County unless he is able to establish a breach of the union's duty.

## UNION'S DUTY OF FAIR REPRESENTATION

In 1964, the United States Supreme Court first examined the duty of fair representation in the context of grievance procedures. David Colburn, *Duty of Fair Representation After Hoffman v. Lonza: In Search of a Proper Standard for Reviewing Union Representation in the Grievance Process*, 1983 WIS. L. REV. 1505, 1509, referring to *Humphrey v. Moore*, 375 U.S. 335 (1964). In *Humphrey*, the Court stated:

> "Inevitably differences arise in the manner and degree to which the terms of any negotiated agreement affect individual employees and classes of employees. The mere existence of such differences does not make them invalid. The complete satisfaction of all who are represented is hardly to be expected. A wide range of reasonableness must be allowed a statutory bargaining representative in serving the unit it represents, subject always to complete good faith and honesty of purpose in the exercise of its discretion." . . . Just as a union must be free to sift out wholly frivolous grievances which would only clog the grievance process, so it must be free to take a position on the not so frivolous disputes. Nor should it be neutralized when the issue is chiefly between two sets of employees. Conflict

between employees represented by the same union is a recurring fact. To remove or gag the union in these cases would surely weaken the collective bargaining and grievance processes.

*Id.* at 349-50 (quoting *Ford Motor Co. v. Huffman,* 345 U.S. 330, 338 (1953)).

*Mahnke* quoted parts of this passage with approval, and recognized that a breach of statutory duty occurs only when a union's conduct toward a member of the collective bargaining unit is arbitrary, discriminatory, or in bad faith. *Id.* at 531, 225 N.W.2d at 622.[4]

Gray's complaint alleges that the union breached its duty of fair representation. Specifically, count two of Gray's complaint provides in relevant part:

14. Defendant AFSCME breached its duty and responsibility to fairly represent Plaintiff against Defendant Marinette County concerning Defendant Marinette County's change in Plaintiff's employment status by not pursuing or failing to fully pursue grievance remedies, which breach was arbitrary, discriminatory and in bad faith.

Gray argues that under *Clark v. Hein-Werner Corp.,* 8 Wis. 2d 264, 99 N.W.2d 132 (1959), the union has breached its duty of fair representation because it represented another union member with diametrically opposed interests. In *Clark,* our supreme court stated:

---

[4] For examples of the application of this standard in other cases, *see Air Line Pilots Ass'n Int'l v. O'Neill,* 499 U.S. 65 (1991); *Ooley v. Schwitzer Div., Household Mfg. Inc.,* 961 F.2d 1293 (7th Cir. 1992).

> [W]here the interests of two groups of employees are diametrically opposed to each other and the union espouses the cause of one in the arbitration, it follows as a matter of law that there has been no fair representation of the other group. This is true even though, in choosing the cause of which group to espouse, the union acts completely objectively and with the best of motives. The old adage, that one cannot serve two masters, is particularly applicable to such a situation.

*Id.* at 272, 99 N.W.2d at 137. While this language suggests the union may have breached its duty to fairly represent Gray's grievance by having already represented Mosconi's grievance, we conclude that *Clark* is no longer controlling law on the issue of the duty of fair representation.

*Clark* was decided in 1959, while the law on fair representation was "still in a state of flux." *Id.* at 270, 99 N.W.2d at 135. The *Mahnke* language quoting *Humphrey* contradicts any suggestion in *Clark* that when a union chooses to represent a union member whose interests are "diametrically opposed" to those of another member, the union has breached its duty of fair representation to the second member. When decisions of our supreme court appear to be inconsistent, we follow the court's most recent pronouncement. *Hill v. LIRC*, 184 Wis. 2d 101, 110, 516 N.W.2d 441, 446 (Ct. App. 1994). Therefore, we follow *Mahnke*, which was decided sixteen years after *Clark*. Because *Mahnke* is controlling, Gray's argument that the union violated its duty when it processed Gray's grievance because it

had already processed a grievance that is "diametrically opposed" must fail.[5]

Additionally, Gray argues there are material facts in dispute or that the undisputed facts do not support summary judgment in favor of the union and the County on his claim that the union breached its duty of fair representation by not pursuing or failing to fully pursue grievance remedies. For example, Gray states that: (1) the local union president asked him to sign a waiver of unemployment benefits prior to his demotion to part-time status; (2) Mosconi's grievance was untimely on its face; (3) Mosconi and Gray never competed for the same position; (4) the County denied Mosconi's grievance three times; (5) Mosconi was a union steward at the time of his grievance; and (6) the union never informed him of Mosconi's grievance or the potential effect on Gray's full-time position if the grievance was approved or settled.

The parties debate whether these facts are undisputed or supported by affidavits in the record. We need not address each of these debates, because they fail to address the subject of Gray's claim against the union: its failure to pursue *Gray's subsequent grievance* against the County for violating the collective bargaining agreement. The complaint Gray filed in this action is not about the union's actions during the Mosconi grievance; the pleadings address the union's conduct during Gray's grievance. The union explains:

<hr>

[5] For additional cases recognizing that *Clark v. Hein-Werner Corp.*, 8 Wis. 2d 264, 99 N.W.2d 132 (1959), is no longer controlling precedent, *see Miller Brewing Co. v. Brewery Workers Local Union No. 9*, 562 F.Supp. 1368, 1372-73 (E.D. Wis. 1983), *modified on other grounds*, 739 F.2d 1159 (7th Cir. 1984), and *Benson v. Communication Workers of America*, 866 F.Supp. 910, 922-23 (E.D. Va. 1994).

> It is important to understand what Gray's DFR [duty of fair representation] claim does *not* allege—it does not allege that the Union's pursuance of the Mosconi grievance was a breach of its duty to fairly represent Gray. In fact, Gray does not even claim that the Union's decision to *settle* the Mosconi grievance as it did was arbitrary, discriminatory or done in bad faith. (Emphasis in original.)

Thus, because Gray's complaint alleges only that the union breached its duty of fair representation by failing to pursue Gray's grievance, Gray's claim against the union for breach of its duty of fair representation depends on the union's actions during Gray's grievance. All of the facts Gray disputes, or argues are supportive of his claim, concern actions that occurred before Gray ever filed a grievance. They are, therefore, not material facts, whether disputed or not. *See Baxter*, 165 Wis. 2d at 312, 477 N.W.2d at 654 (The alleged factual dispute must concern a fact that affects the resolution of the controversy.).

Our examination of the record reveals Gray has not established any material fact regarding his grievance that conflicts with the affidavits filed by the parties moving for summary judgment. In two affidavits, union representatives explain the steps they took to decide whether to pursue Gray's grievance. Union president Connie Winchell's affidavit states that she spoke with Gray, the sheriff and other employees; reviewed and researched the union's experience on this and related subjects; reviewed test results for the position of corrections officer; and ultimately decided not to file or pursue a grievance for Gray because she felt that such a grievance would be without merit and she could find no violation of the applicable collective bargaining agreement.

Union steward Denise Carl's affidavit states that she spoke with Gray, the sheriff and others; noted that Gray had not passed the examination and concluded that no grievance should be filed; and reported this conclusion to the union's executive board, which affirmed her refusal to file a grievance.

Gray does not offer any affidavits that contradict these affidavits. Thus, the underlying material facts, those dealing with Gray's grievance, are not in dispute. Additionally, there are no conflicting inferences that can be drawn from the affidavits; they raise the issue whether the union's actions constitute fair representation as a matter of law. Therefore, our next step is to determine whether the union and the County are entitled to judgment as a matter of law. *See Schultz v. Industrial Coils, Inc.*, 125 Wis. 2d 520, 521, 373 N.W.2d 74, 74-75 (Ct. App. 1985) (Where there is no genuine issue of fact, we proceed to decide whether the moving party is entitled to judgment as a matter of law.); § 802.02(2), STATS. The application of a particular legal standard to a certain set of facts is a question of law. *Nigbor v. DIHLR*, 115 Wis. 2d 606, 611, 340 N.W.2d 918, 921 (Ct. App. 1983), *aff'd,* 120 Wis. 2d 375, 355 N.W.2d 532 (1984).

We conclude that, as a matter of law, the material facts concerning Gray's grievance do not constitute facts that meet the standard articulated in *Mahnke*. Specifically, the facts do not indicate that the union's conduct toward Gray was arbitrary, discriminatory or in bad faith. *See id.* at 531, 225 N.W.2d at 622. Instead, the undisputed facts indicate that the union listened to Gray, discussed the merits of his grievance and elected not to pursue it. Additionally, the fact that the union had previously represented Mosconi does not make its

conduct during Gray's grievance arbitrary, discriminatory or in bad faith. Our supreme court recognized in *Mahnke* that unions should have the freedom to represent one union member whose interests are opposed to the other. In *Mahnke*, our supreme court quoted with approval the following language: "Just as a union must be free to sift out wholly frivolous grievances which would only clog the grievance process, so it must be free to take a position on the not so frivolous disputes." *Id.* at 531, 225 N.W.2d at 372. We agree with the union:

> It only makes sense . . . that the Union refused to pursue Gray's grievance. Gray came to his union steward and union president . . . only 17 days after the Union had settled the Mosconi grievance, and asked the Union to grieve the very employment action to which it had just agreed by resolving the contractual violation claimed in the Mosconi grievance. It would defy reason to believe that the Union could then have advocated, in good faith, a grievance which would seek to upset that resolution.

On the undisputed facts, we conclude the union's refusal to pursue Gray's grievance was not arbitrary, discriminatory or in bad faith and, therefore, we affirm the trial court's dismissal of Gray's claim against the union for breach of its duty of fair representation. With respect to Gray's claims against the County, we note that because we conclude Gray has no claim against the union, the only procedure available to him to proceed against the County is the grievance procedure. We have already concluded that Gray has no right to proceed directly against the County under this procedure. Therefore, there is no basis upon which Gray can continue to pursue his claim that the County violated its

collective bargaining agreement by demoting him to part-time or by refusing to hear his grievance. Thus, Gray's claims against the County alleging violation of the collective bargaining agreement must be dismissed.

## CONSTITUTIONAL CLAIMS

Gray argues that when construed together, counts three and four of his complaint allege that he was deprived of rights secured by the Constitution and laws of the United States and further was deprived of property without due process of law. Gray states, "This is more particularly described as a § 1983 action." Counts three and four of the complaint provide in relevant part:

> 18. By reason of those matters set forth in paragraphs one through sixteen, Plaintiff was deprived of rights, privileges, and immunities guaranteed by the Constitution and laws of the United States;
>
> . . . .
>
> 21. By reason of those matters set forth in paragraphs one through twenty, Plaintiff was deprived of property without due process of law.

Based on these allegations, Gray argues:

> The occurrences out of which the § 1983 claim arises are Plaintiff's demotion and both the County's and the Union's failure to follow or proceed under the grievance procedures of Article 4 of the CBA . . . . Thus, Plaintiff's allegations of being deprived of full-time employment without any

grievance procedures being followed states a § 1983 claim upon which relief may be granted.

At the trial level, these counts were dismissed with counts one and two because the trial court concluded recovery on the federal claims was contingent upon recovery on the first two counts. On appeal, Gray devotes little discussion to these two claims and fails to address whether they should survive if this court concludes, as it now has, that counts one and two should be dismissed. Additionally, Gray has not explained how the privileges and immunities clause of the constitution has been violated, or offered any case law that indicates a due process claim and privileges and immunities claim should be construed together to constitute a 42 U.S.C. § 1983 claim. Finally, Gray has not given any record cites for specific facts that would support his claim, or applied such facts to the applicable law on due process and privileges and immunities. The lack of development of these claims leads us to conclude they do not merit further consideration on appeal. *See State v. Pettit*, 171 Wis. 2d 627, 647, 492 N.W.2d 633, 642 (Ct. App. 1992) (Court of appeals may decline to review an issue inadequately briefed.).

For the foregoing reasons, we affirm the trial court's summary judgment dismissing Gray's complaint against the union and the County.

*By the Court.*—Judgment affirmed.